GERMAN NATIONAL BANK OF HASTINGS V. FIRST NATIONAL BANK OF HASTINGS ET AL.

FILED MAY 4, 1898.    No. 7934.

1. **Insolvent Corporations:** PREFERRING CREDITORS. An insolvent corporation, merely because it is a corporation, is not prohibited from preferring particular creditors.

2. ———: TRUST FUNDS: RIGHTS OF CREDITORS. A corporation resolved to remove its stock of merchandise to a distant city and effect a consolidation there with another corporation. Afterwards its managing officers determined, in order to avoid trouble with creditors, to retain a portion of the goods, sell them, and apply the proceeds to the payment of debts. No trust was created and no provision made for the manner of the application of the proceeds. *Held,* That this arrangement did not constitute the goods a trust fund for the payment of creditors *pro rata.*

3. ———: SALE OF ASSETS: CONVERSION. The president, one director, and a stockholder who was not a director, acting without authority from the board of directors, sold all the visible assets of an insolvent corporation and turned the proceeds of the sale over to a single creditor, a corporation in which two of the persons so acting were interested and of which they were directors. *Held,* That such acts amounted to a conversion of the corporate property.

4. ———: ———: ———: RATIFICATION. Such acts were reported to a meeting of the board of directors, attended by four out of seven members, two of the four being directors of the preferred corporation also. No action was taken. *Held,* That this did not con-

stitute a ratification of the acts of the persons selling the assets and paying out the proceeds.

5. **Corporations:** Validity of Transactions. If a transaction between two corporations, effected by the votes of directors common to both, can in any event be sustained, it must only be on an affirmative showing of good faith.

6. **Creditors' Bill.** An action in the nature of a creditors' bill may be maintained by a judgment creditor to reach any assets of the debtor subject to the payment of his debts, which cannot be reached by ordinary process of law.

7. ——: Parties: Conversion. So, where the debtor's property, subject to the payment of his debts, has been wrongfully converted by a stranger, the creditor may, by suit in the nature of creditors' bill, reach the debtor's cause of action for conversion.

8. **Actions:** Estoppel: Laches: Pleading. Estoppel by laches in delaying the commencement of an action is not available as a defense unless pleaded.

Error · from the · district court of Adams county. Tried below before Beall, J.    *Reversed.*

*Tibbets, Morey & Ferris,* for plaintiff in error.

*Capps & Stevens, John A. Casto,* and *J. B. Cessna, contra.*

Irvine, C.

The petition of the German National Bank against the First National Bank, Alonzo L. Clark, and Oswald Oliver alleged the existence of a corporation called the Burger-Alexander Hardware Company; that Clark and Oliver were stockholders therein and Oliver a director thereof, and that Clark and Oliver were also stockholders in and president and vice-president, respectively, of the defendant the First National Bank. These facts were admitted by the answer. The petition further alleged that the plaintiff was a judgment creditor of the hardware company and that an execution issued upon its judgment had been returned unsatisfied; that the hardware company had previously in the city of Hastings goods to the value of $20,000, which it was agreed between the officers thereof, the defendants and the plaintiff, should be sold and the proceeds applied *pro rata* to the satisfaction of

debts; that Clark and Oliver sold the goods for about $10,000 and turned the proceeds over to the First National Bank, which converted them to its own use. The prayer was that the defendants be required to account for the value of the goods and that they be required to pay to plaintiff its *pro rata* part thereof. After answers had been filed denying these allegations, except in the particulars above stated, the case was referred to John M. Stewart, Esq., to take the proofs and report findings of fact and conclusions of law. The referee found, in brief, that the hardware company had been organized in 1888 with a capital stock of $100,000, of which $70,000 was paid up; that it carried on a hardware business in Hastings until November, 1890, when it was by the stockholders resolved to ship its property to Denver and effect a consolidation with the Denver Hardware Company. January 1, 1891, merchandise inventoried at $53,000 was accordingly shipped to Denver, and the company received in exchange therefor stock in the Denver company of the par value of $53,000. Merchandise of the cost price of $28,000 was left in Hastings "to avoid trouble with and satisfy" the Hastings company's creditors, and as a provision for the payment of its debts, amounting to from $35,000 to $40,000. The company also had due it on book accounts about $32,000, most of which was uncollectible. The managing officers of the Hastings company then determined to keep its business open until a reasonable opportunity should occur to dispose of the goods so retained, "and under such arrangement it was provided that the fund derived from the sale of such merchandise and the collection of such accounts should be applied to the payment of its said indebtedness." Business was continued in Hastings until September, 1891, and during the interval the stock was partly replenished, but on the latter date it had been reduced to about $16,000, and was then sold to one Hamot for $9,600, which sum the referee finds was its fair market value. Notes given by Hamot in payment were turned over to the First National Bank

and their amount credited on the indebtedness of the hardware company to that bank. The notes have since been paid. The sale of the goods and the application of the proceeds were made by Clark and Oliver, together with Burger, the president of the hardware company, and this conduct "was acquiesced in by Samuel Alexander [another director of the First National Bank] and E. O. Alexander, directors of such company, together with said Burger and Oliver, when in session as a board of directors of such company, at the meeting of September 10, 1891, but no vote was taken or resolution adopted on that subject at such meeting or at any other time by such board of directors." The company had seven directors. Other facts are found which clearly enough show the insolvency of the hardware company at that time. It was further found that the plaintiff was notified by the managing officers of the hardware company of the arrangement for retaining the goods in Hastings for the purpose of paying debts and relied on its receiving its proportion of the proceeds of any sale. The First National Bank, through Clark, its president, had also notice of the arrangement, and that plaintiff was relying thereon. The stock in the Denver company became worthless through the subsequent failure of that company, and was sold on execution for a nominal sum. On these findings the referee based three conclusions of law: First, that the facts were insufficient to create a lien in favor of plaintiff on the goods or their proceeds; second, that the goods and proceeds were not held by the managing officers of the hardware company as a trust fund for plaintiff and other creditors, but that they had authority to sell the goods and apply the proceeds to the payment of the debt to the First National Bank, and in doing so they violated no right of plaintiff; third, that the defendants were entitled to judgment. Exceptions to the report were overruled and a judgment of dismissal entered. The plaintiff brings the case here by petition in error, alleging as error only that the conclusions of

law and judgment are not sustained by the findings of fact.

The conclusions of law are assailed in the briefs on several grounds. The first of these is that an insolvent corporation is without authority in any case to prefer particular creditors, its assets constituting a trust fund which must be devoted to the payment of creditors *pro rata*. Since the briefs were filed this doctrine has been by this court repudiated, and it has been held that the generally recognized right to prefer creditors is not defeated by the single fact that the debtor is a corporation. (*Shaw v. Robinson-Stokes Co.*, 50 Neb. 403.) Next it is claimed that there was here an actual appropriation of certain property for the payment of creditors *pro rata*. The findings do not support that theory. It would seem that it was contemplated that the assets left in Nebraska would prove sufficient to pay all debts, but there was not any specific appropriation thereof for the payment of debts in any particular manner. The business was kept in operation for many months, and from the findings it is evident that a considerable quantity of goods must have been in the meantime disposed of in the usual course of trade before the final sale was made. No provision was made for the preservation of the fund so derived or for its distribution among creditors, and it is at least inferable that the arrangement was merely to so retain the goods here and so conduct the business for the satisfaction of the debts in the ordinary way and as a going concern usually acts. While it is found that the plaintiff was informed of the arrangement and relied on the application of the proceeds of the goods to the payment of creditors *pro rata*, there was nothing in the facts to warrant it in so relying. No assignment was made. No trust was created. No promise is shown, even, to so apply them. All that the facts found warrant is that the business was not to be closed, but that the concern was to be kept going until the stock was disposed of, and that the proceeds were to be used to pay debts—not in any par-

ticular proportion, but as the law permitted them to be paid.

The next objection is based on the manner in which this preference to the First National Bank was effected, or sought to be effected. This objection we think well taken, but not for all the reasons advanced in argument. For instance, we are not prepared to hold that the rule which forbids directors to prefer debts owing to themselves, or debts for which they are personally liable,—a rule enforced and illustrated by *Ingwersen v. Edgecombe*, 42 Neb. 740, *Tillson v. Downing*, 45 Neb. 549, and *Stough v. Ponca Mill Co.*, 54 Neb. 500,—extends so far as to broadly, and in all cases, prohibit directors from preferring a debt owing to another corporation in which they happen to be stockholders. We pass that question as unnecessary to a decision of this case. By recurring to the findings of fact it will be observed that what was here done was not done by the corporation at all, nor by its board of directors, but was the act of the president, a director and a stockholder, the two last mentioned being officers of the preferred corporation. It needs no argument to prove that these men had no authority to make a sale of all the corporation's visible assets and turn the proceeds over to a single creditor. Their acts amounted to a conversion of the property, pure and simple. The bank had notice of the facts and by receiving the proceeds became a party to the wrong. (*Cole v. Edwards*, 52 Neb. 711.) The corporation did not ratify this act. Four directors out of seven met. The facts were reported. The referee finds that they acquiesced, but they took no vote and passed no resolution; in other words, they did nothing. As a board of directors they could have done nothing which would bind the corporation, because, of the four present, two were directors of the preferred corporation; their votes, or the vote of one of them, would be essential to action, and a resolution so adopted would be voidable. (*Metropolitan Telephone & Telegraph Co. v. Domestic Telegraph & Telephone Co.*, 14 Atl. Rep. [N. J.] 907; *Smith v.*

*Los Angeles Immigration & Land Co-operative Ass'n,* 12 Am.
St. Rep. [Cal.] 53.) It is true that there is a conflict of
authority as to the character of an act moved by the vote
of common directors of two contracting corporations, but
the question discussed is not whether such contracts are
valid,. for it is conceded they generally are not. The
question is whether they are always voidable at the elec-
tion of the stockholders, or whether they may be sus-
tained on an affirmative showing of fairness and good
faith. Even if the latter rule be conceded to be the cor-
rect one, there are no findings here to sustain the act if a
ratification had been attempted. The corporation sim-
ply did not act at all, and was not in a position at the
only meeting held to have bound the stockholders.
What then follows? If A is in debt to B and C seizes
A's property and converts it to his own use, must B per-
mit the property, which he had a right to resort to for
payment, to be diverted and satisfaction thereby pre-
vented, simply because A does not see fit to pursue it?
When a creditor is unable to reach the debtor's property
by execution, he may follow it by creditors' bill until it
reaches the hands of an innocent purchaser for value.
(*Union Nat. Bank of Chicago v. Douglas,* 1 McCreary [U. S.
C. C.] 86; *Railroad Co. v. Howard,* 7 Wall. [U. S.] 392.) It
is not only in the case of a fraudulent transfer that such
a proceeding will lie, but the right extends to all cases
where a resort to equitable remedies or procedure be-
comes necessary to obtain satisfaction of a judgment.
By creditors' bill property may be reached which has
been conveyed away by contract against public policy.
The debtor in such case stands in the same position as
a fraudulent grantor. (*Hall v. Hart,* 52 Neb. 4.) Again,
it has been held that a creditor may in such manner reach
a debtor's right of action for an injury to property to
which the creditor had a right to look for satisfaction.
(*Hudson v. Plets,* 11 Paige Ch. [N. Y.] 180.) Now in this
case all the property to which the plaintiff could have
resorted was seized by the defendants. Surely plaintiff

has a right to pursue it.  The fact that it was appropriated to the payment of a debt is immaterial.  The debtor made no such appropriation.  It was the wrongdoers themselves who so appropriated it.  Creditors cannot be permitted to obtain payment by an unlawful seizure of the debtor's property.  (*Murphy v. Virgin*, 47 Neb. 692.)  The conclusions are, therefore, not warranted by the findings in so far as they hold that Clark and Oliver had authority to turn the notes over to the First National Bank and that plaintiff is not entitled to relief.

Defendants contend that plaintiff is estopped from maintaining the action.  No such defense is pleaded and the referee finds no facts warranting the argument made on the question.  On the contrary, he finds that the plaintiff proceeded with due diligence and that the defendants have suffered no injury by any delay.

REVERSED AND REMANDED.

RAGAN, C., not sitting.