Millard v. Parsell.

JOSEPH H. MILLARD, APPELLEE, V. GEORGE H. PARSELL
ET AL., APPELLANTS.

FILED DECEMBER 8, 1898. No. 8467.

1. **Creditors' Bill:** EQUITABLE ESTATE. When the legal estates of a judgment debtor have been exhausted, a petition in the nature of a creditors' bill will lie in order to subject to payment of the judgment land in which his estate is equitable only and which could not be reached on execution, or, if reached, could not be sold to advantage because of the clouded condition of the title.

2. ————: FINDING FOR PLAINTIFF: EVIDENCE. Evidence examined, and *held* to sustain a finding for the plaintiff in a creditor's suit.

3. ————: DEFICIENCY JUDGMENT: DEFENSE. Matters which, if available at all, might have been urged in defense to an application for a deficiency judgment cannot be urged in defense of a creditor's suit to enforce such judgment.

4. **Final Order:** LIABILITY OF GUARANTOR. An order that after exhausting the remedy against the principal debtor the creditor may apply for and obtain a judgment against a guarantor of collection is not final, and therefore not appealable.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J. *Affirmed in part.*

*W. H. De France, Silas Cobb, Otis H. Ballou, John H. Ames, A. E. Harvey, Meikle & Gaines,* and *Henry A. Drumm,* for appellants.

*L. F. Crofoot, contra.*

IRVINE, C.

In 1887 Dr. George H. Parsell was the owner of lot 3, in block 78, in the city of Omaha, and June 11 of that year he made to O. H. and E. G. Ballou his note for $13,125, secured by mortgage on said lot. In 1889 the Ballous sold the note and mortgage to J. H. Millard, who is throughout the proceedings described as trustee, the nature of the trust not being disclosed and being immaterial. The Ballous at the same time guarantied the col-

lection of the note.   In 1890 Dr. Parsell conveyed the property to E. B. Chapman.   In 1891 Millard began foreclosure proceedings, which resulted in a sale of the property and a judgment against Dr. Parsell for a deficiency of about $2,800.   Certain other property of Dr. Parsell having been sold on execution for a nominal sum the present case was begun.

The petition is multifarious, but its principal object was to subject to the satisfaction of the judgment a tract of eighty acres in Douglas county, which had been by Chapman conveyed to Mrs. Parsell at the time lot 3 was conveyed to Chapman, and which Mrs. Parsell had afterwards conveyed to Horatio Fowkes.   The petition charges that the conveyance of this land from Chapman to Mrs. Parsell was for the purpose of defrauding Dr. Parsell's creditors, also that the consideration was the conveyance of lot 3 to Chapman, and moved entirely from Dr. Parsell, who became the equitable owner of the eighty-acre tract.   It was further alleged that the conveyance to Fowkes was colorable only and made to defraud Dr. Parsell's creditors.   Certain other instruments are incidentally attacked, but they are so connected with those mentioned that all must stand or fall together, and it is useless to complicate the opinion by specific reference thereto.   Issue having been joined on these averments, the court found that the conveyance of the land to Mrs. Parsell was not made for the purpose of defrauding creditors, but that it was made in trust for Dr. Parsell, and that he was the equitable owner.   The court further found that the conveyance from Mrs. Parsell to Fowkes was made for the purpose of defrauding Dr. Parsell's creditors, and that Fowkes knew of such purpose. The plaintiff therefore had a decree.   Mrs. Parsell having died, her heirs were parties, and they, together with Dr. Parsell and Fowkes, appeal.

Without reviewing the evidence in detail it is sufficient to say that it supports the finding that the consideration for the transfer of the property to Mrs. Parsell was the

conveyance of lot 3 to Chapman; that there was at least a resulting trust to Dr. Parsell, and that the land was in equity his. It is contended that a creditors' bill will not lie on this ground—that a fraudulent intent must be shown, which here did not exist. But counsel overlook the rule that equitable as well as legal estates are subject to the payment of debts, and that when the estate is equitable only, and a sale on execution would pass no title, or a title so clouded as to discourage bids, a petition in the nature of a bill in equity is the appropriate, and often the necessary, procedure. (*Hoagland v. Wilson*, 15 Neb. 320; *Sweet v. Craig*, 15 Neb. 349; *Brownell v. Stoddard*, 42 Neb. 177.) The foregoing cases were complicated with issues of fraud, but the principle is recognized in each. (See, too, *German Nat. Bank of Hastings v. First Nat. Bank of Hastings*, 55 Neb. 86.)

Counsel further contend that the petition was framed on the theory of a fraudulent conveyance and does not call for relief on the other ground; but if all the allegations of fraud be rejected, there still remain sufficient averments to charge an equitable estate in accordance with the proof.

The finding of fraud in the transfer to Fowkes presents a more doubtful question. The day after lot 3 was appraised for the purpose of the foreclosure sale the Parsells executed a deed, leaving blank the space for designating the grantee, and describing the eighty-acre tract and another lot in Omaha, which will be called, as it is termed in the briefs, the Sunnyside lot. The appraisement mentioned had been at a sum less than the mortgage debt, so that the probability of a deficiency judgment was then evident. This deed was given to Mr. Potter, a brother-in-law of Mrs. Parsell and a real estate broker. He was to negotiate a sale, and apparently to complete the deed and deliver it in pursuance of such sale as he should make. A few weeks thereafter there was received by Mr. Cobb, a son-in-law of the Parsells, a letter from Potter from New York, containing a bank draft

for $4,350 as part of the consideration of the sale of the land to Fowkes. The remainder of the consideration was made up by Fowkes' assumption of a mortgage on the Sunnyside lot, and by a mortgage made by him to Dr. Parsell for $1,150 on both tracts. There was also a lease from Fowkes to Dr. Parsell whereby Dr. Parsell was to remain in possession of the land until the rent reserved should pay the mortgage. Mr. Cobb testifies that he gave the draft to Mrs. Parsell, who presented it to her daughter, Mrs. Cobb. The latter handed it to Cobb, who cashed it and invested the proceeds for Mrs. Cobb's benefit. When inquiry was made as to the manner of investment, further investigation was closed by an objection by Fowkes' attorney that the matter was privileged, Cobb acting as attorney for his wife and for Mrs. Parsell. When we consider the fact that the deed was made in blank and the negotiations with Potter took place as soon as a deficiency judgment became imminent, the fact that through the Cobbs it might have been shown what became of the money; that Parsell was to remain in possession of the land; that none of the witnesses had ever seen Fowkes or heard of him except in this transaction; that Potter, a relative of the Parsells, who must have known if the transaction was genuine, was not called as a witness or his absence accounted for; that Fowkes himself, while he appeared by attorney, did not testify; that he made the purchase after brief negotiations and apparently without seeing the land; that all the active participants, unless it be Fowkes, were relatives of the Parsells; when we consider these facts we must conclude that the finding of the district court has sufficient support.

The peculiar fact that this is an attempt by the mortgagee, after fully availing himself of his security, to reach for a deficiency property obtained only in exchange for the equity of redemption in the mortgaged land, and which would not be available if the transaction attacked had not occurred, may relieve the transaction from criti-

cism on ethical grounds, but it does not affect its legal aspect.

Complicated with the main case there is the contention that a house, which substantially enhanced the value of the mortgaged premises, was removed before the foreclosure, but after Chapman acquired the property. It is asserted that Millard permitted the removal and is thereby estopped from asserting his judgment, or at least that credit should be given thereon for the amount which the lot suffered in value by the removal of the house. In the first place the proof shows that Millard not only did not consent to this waste, but that he endeavored to prevent it, but obtained an injunction only after the removal had been effected. In the second place, all this occurred prior to the judgment. If the facts were of any avail it was as a defense to the application for judgment. Thereby appellants were concluded. Such facts certainly constitute no defense to a creditors' bill.

The Ballous were parties to the suit, and against them a judgment was sought on their guaranty of collection. This constituted multifariousness in the petition, but no objection was made on that ground. The court did not give judgment against the Ballous, but ordered that should there still remain a deficiency after subjecting the land in controversy to the payment of the Parsell judgment, plaintiff might then apply for and obtain judgment against the Ballous. The Ballous undertake to appeal from this part of the decree, but their appeal is premature. The two causes of action are entirely distinct, and the decree, so far as it affects the Ballous, is not final. There is no judgment against them yet; *non constat* that there will ever be. If there should be, they may then have it reviewed.

The appeal of the Ballous is dismissed, without an adjudication of the correctness of the decree so far as it affects them. In other respects the decree of the district court is affirmed.

JUDGMENT ACCORDINGLY.