ALBERT MILLER, APPELLEE, V. RENFREW STEVENSON
ET AL., APPELLANTS.

FILED MARCH 22, 1899.   No. 10210.

1. **Quieting Title:** FINDING THAT MORTGAGE HAD BEEN PAID. Evidence examined, and *held* to sustain the findings.

2. **Subrogation:** PLEADING. The pleadings and issues joined *held* to be inconsistent with and not to present the question of the right to subrogation.

APPEAL from the district court of Douglas county. Heard below before KEYSOR, J. *Affirmed.*

*Bartlett & Baldrige,* for appellants.

*Byron G. Burbank* and *Virgil O. Strickler, contra.*

HARRISON, C. J.

Albert Miller, the appellee herein, who purchased at a sale under process in an attachment suit the undivided one-half of lot 19, in Cain Place, in Omaha, instituted this action to quiet title and secure a partition, and was awarded a decree, from which this appeal has been perfected.

On or about April 14, 1890, Renfrew Stevenson and certain other parties formed a partnership and purchased some land, which was platted into lots, nineteen in all, and the whole was named Cain Place. The purchase was from one Martha M. Ish, who conveyed the property to Orrin R. Cain in trust for the partnership. Cain and the appellee were partners and entered into a contract with the firm of Stevenson, Bohn & Spotswood to erect dwelling-houses on eighteen of the lots in Cain Place. This contract was performed, and Miller and Cain, who claimed to not have received full payment for building the houses and to recover a balance alleged to be due, commenced and prosecuted to the end the attachment

24

proceedings which resulted in the sale of the undivided one-half of lot 19, in Cain Place, to the appellee. Lot 19 had been left vacant. Orrin R. Cain conveyed the title to lot 19 to Bohn, and Stevenson and Bohn conveyed the undivided one-half of said lot to William S. Roberts, who conveyed to Thomas Rowland by quitclaim deed, and Rowland conveyed to one John Stevens, Sr. When the land was purchased of Martha M. Ish, two notes evidencing a portion of the purchase price were executed and delivered to her, one in the sum of $11,050 and the other $11,450, and to secure their payment a mortgage on the land sold was executed and delivered. The note for $11,450 was subsequently sold to Edward or Sarah Ainscow and the mortgage in part assigned. During the time the eighteen houses were in process of construction one A. J. Whidden, secretary of the Star Union Lumber Company, was treasurer of the partnership, the owner of Cain Place, and Stevenson, of the partnership, was vice-president of the Star Union Lumber Company. One John R. Davis was its president and Ben W. Davis a stockholder and director. John R. Davis was also president of the Davis Lumber Company, and he and Ben W. Davis were its owners, directors, and officers. The place of business of the Davis Lumber Company was in Wisconsin, and the Star Union Lumber Company was a branch house located in Omaha. The latter company furnished the lumber which was used for the erection of the eighteen houses in Cain Place, and it also made advances or loans of money to the partnership, the owners of Cain. Place. During the course of the transactions more or less connected from which originated the present litigation the Star Union Lumber Company assigned its assets to the Davis Lumber Company, and the latter assumed and agreed to pay the debts of the former.

To convey information in regard to the issues litigated we deem it best to quote to some extent from the pleadings. It was of the allegations of the petition:

"1. The plaintiff alleged that on April 14, 1890, Steven-

son, Bohn, and Spotswood formed a partnership and acquired title to an undivided one-half of lot 19 in Cain Place, in Omaha, Douglas county, Nebraska, together with other property; that the title was first conveyed to Spotswood and by him to one Orrin R. Cain, and by Cain to Stevenson and Bohn; that all of these persons held the title in trust for said partnership; that subsequently Spotswood conveyed his interest to Stevenson and Bohn; that all of said instruments were duly recorded in the office of the register of deeds of Douglas county, Nebraska, and were legal and valid conveyances of the parties hereto.

"2. That on March 28, 1891, Bohn conveyed to Roberts the title to the undivided one-half of said lot 19, which deed was recorded June 15, 1891, in the office of the register of deeds, and was wholly without consideration and for the benefit only of the partnership.

"3. That on January 2, 1894, Roberts conveyed said title to Thomas Rowland, which deed was recorded April 7, 1894, and was a quitclaim deed in form and wholly without consideration, and procured from said Roberts by said Rowland, knowing Roberts held the title in trust for said partnership, and was procured for the purpose of cheating and defrauding the creditors of said firm.

"4. That on January 3, 1894, Rowland conveyed the title to John Stevens, Sr., defendant, which deed was recorded April 27, 1894, and was wholly without consideration, and made for the purpose of preventing the creditors of said partnership from recovering payment out of the assets of said partnership, and was fraudulent in fact.

"5. That Spotswood executed a purchase-money mortgage upon said lot and other property, which has been paid. Nevertheless, the Davis Lumber Company, a corporation, defendant, had fraudulently procured an assignment of two notes, whereon an alleged balance of $3,487.71 was claimed to be due it, and then assigned the notes and mortgage to George A. Davis, defendant; that the assignment was made February 6 and recorded Febru-

ary 14, 1894; that the Davis Lumber Company claims the said mortgage valid upon said lot 19 and other property, although said notes have been fully paid, and that the assignment to the Davis Lumber Company and George A. Davis were without consideration and fraudulent and were made for the purpose of defeating the claims of the creditors of the firm of Stevenson, Spotswood & Bohn.

"6. That John R. Davis and George A. Davis are brothers; that Rowland is in the employ of the Davis Lumber Company; that John Stevens, Sr., is a brother-in-law of John R. and George A. Davis; that the conveyance of Roberts to Rowland and Rowland to Stevens, Sr., and the assignment to the Davis Lumber Company of said notes, and the assignment by the Davis Lumber Company to George A. Davis of the note and mortgage securing them, were without consideration and a part of a fraudulent scheme to cheat and defraud the creditors of said partnership and prevent the collection of their just demands against the partnership."

There followed allegations relative to the attachment suit and the sale of the undivided one-half of lot 19, in Cain Place, and its purchase by appellee; also some other facts to make appear his right to a partition.

In the answer it was pleaded:

"The defendants Thomas Rowland, George A. Davis, John Stevens, Sr., John R. Davis Lumber Company answered on April 10, 1897. They admitted the statements and allegations in paragraph 1 of the petition.

"2. Defendants admit that on March 28, 1891, Bohn conveyed to Roberts the undivided one-half interest in lot 19; that said deed was duly recorded on June 15, 1891. Defendants deny that the deed was without consideration and for the benefit of the partnership, and allege that they had no knowledge whereon to form a belief that said transfer was without consideration and for the benefit of the partnership.

"3. Defendants admit that on January 2, 1894, Roberts conveyed said undivided one-half of lot 19 to Rowland;

denies the deed was without consideration; that Rowland knew Roberts held the title in trust for said Bohn and the partnership; denies that Rowland or any of the defendants knew the deed was procured by Roberts from Bohn without consideration; denies that the deed was procured by Roberts from Bohn or by Rowland from Roberts for the purpose of cheating or defrauding the creditors of Stevenson, Bohn & Spotswood individually or as a partnership; defendants admit and allege the fact to be that said transfer was made to the said Rowland in trust for the said John R. Davis and for his use and benefit.

"4. Defendants admit that on January 3, 1894, Rowland conveyed the title to the undivided one-half of lot 19 to John Stevens, Sr.; denies said deed was without consideration or for the purpose of preventing the creditors of the partnership from recovering the judgment out of its assets, and denies that said transaction was fraudulent in law or in fact.

"5. Defendants allege that at the time of the transfer John R. Davis and the Davis Lumber Company were indebted to Stevens, Sr., in about $80,000; that said transfer by Rowland to Stevens, Sr., was made to secure said indebtedness, together with other property; that said money so secured had been loaned by Stephens, Sr., prior to that time; defendants allege that said money had not all been paid, and that there yet remained due the said Stevens, Sr., a large amount of money which said transfer was to secure.

"6. Defendants say that on May 6, 1890, for a valuable consideration, Spotswood executed and delivered to Martha M. Ish, guardian of James C. Ish, his promissory note, due ninety days after date, with interest at eight per cent per annum until paid, interest payable semiannually, for $11,050; that said note was afterwards indorsed 'without recourse, pay to the order of James C. Ish, Martha M. Ish, guardian;' that at said time James C. Ish was of age and the guardianship had expired; that on

January 30, 1894, for a valuable consideration, Martha
M. Ish and James C. Ish transferred and assigned said
promissory note and mortgage securing the same to the
Davis Lumber Company.

"7. That on May 6, 1890, for a valuable consideration,
Spotswood executed a note to said Ish, guardian, for
$11,450, due ninety days after date, having terms similar
to the preceding note; that before its maturity Ish,
guardian, for a valuable consideration, indorsed and
transferred said note to Sarah Ainscow; that afterward,
on January 30, 1894, said Ainscow transferred to the
Davis Lumber Company, for a valuable consideration,
said last described note and the mortgage securing the
same; that on May 6, 1890, to secure the above notes,
Spotswood, the owner of said premises, executed and de-
livered to Ish, guardian, a mortgage deed upon the fol-
lowing described premises in Douglas county, Nebraska,
beginning at a point 2,450$\frac{2}{3}$ feet north of the southwest
corner of the southwest quarter of section 10, in town-
ship 15 north, thence east 920 feet, thence north 189$\frac{2}{3}$ feet
to the line of said quarter section, thence west 920 feet,
thence south 189$\frac{2}{3}$ feet to the place of beginning, contain-
ing four acres, be the same more or less, which said prop-
erty included lot 19, in Cain Place, described in plaintiff's
petition; that no action at law or suit in equity had been
commenced to recover said debt or any portion thereof,
although it is wholly due; that there is due on said notes
$3,490.10, with interest at eight per cent from January
30, 1894, no part of which has been paid; that failing to
pay said sum, the mortgage deed has become absolute;
that the mortgage deed provided that in case of default
in the payment of principal or interest, or any part
thereof, said Ish, guardian, or her assigns, are authorized
to sell said premises, or such part thereof as was neces-
sary to satisfy the part due with interest; that said con-
dition has become active; that before the commencement
of this suit said Davis Lumber Company sold and trans-
ferred said mortgage for a valuable consideration to

George A. Davis, defendant herein, which assignment was made on February 6, 1894, and said mortgage is a valid lien on lot 19.

"8. Defendants admit that John R. and George A. Davis are brothers, that Rowland is an employé of the Davis Lumber Company, and Stevens, Sr., is a brother-in-law of John R. Davis.

"9. Defendants allege that the other undivided one-half of lot 19 was transferred to George A. Davis to secure an indebtedness which John R. Davis owed said Davis at that time, which indebtedness was due and owing."

There were further allegations of the answer, but they need no notice here.

The reply was as follows:

"The plaintiff Miller alleges that the partnership was in the actual possession of lot 19 at the time Roberts made his deed to Rowland, and that each and all of the answering defendants knew and had full knowledge of that fact, and the further fact that Rowland held the title to the undivided one-half of lot 19 in trust for the use of said partnership, and that he personally claimed no interest therein; that the partnership was in possession of said lot at the time Rowland conveyed to Stevens, Sr.; that Rowland paid no consideration whatever for said land, but was simply a convenient conduit through which the title might pass in furtherance of the fraudulent scheme to cheat and defraud the creditors of said partnership, and particularly Cain and Miller, from collecting the amount due them of said partnership.

"2. Plaintiff admits the execution of the notes of $11,-050 and $11,450 dated May 1, 1891, set forth in the answer, and that the last mentioned note was transferred to Sarah Ainscow, but alleges the fact to be that said transfer was to the said Sarah Ainscow in trust for one Edward Ainscow, who was the real owner thereof; that said notes were secured by the mortgage set forth in the petition of the plaintiff, and that each of said notes were

fully paid and satisfied and constitute no lien upon said premises.

"3. Plaintiff denies each and every allegation in said answer contained, except such allegations as are admitted herein to be true. This reply relates simply to that part and portion of said answer which was not stricken out by the court on the motion of the plaintiff."

We will quote in part the decree:

"That, under all the facts, circumstances, and evidence in the case, the plaintiff is entitled to recover herein against the defendants herein.

"2. That in May, 1890, Ish, guardian, sold and conveyed to Spotswood lot 19, in Cain Place, in Omaha, Douglas county, Nebraska, together with other property; that Spotswood received the title in trust for a partnership composed of himself and the defendants William G. Bohn and Renfrew Stevenson; that shortly thereafter he executed and delivered a deed to said premises to Stevenson and Bohn, who held the land in trust for the partnership; that Bohn conveyed an undivided one-half interest in said land to his cousin, Roberts, defendant herein, who likewise held said title in trust for said partnership and never held the same as owner of said land.

"3. That the Davis Lumber Company, on January 2, 1894, procured from said Roberts a quitclaim deed to the undivided one-half of said lot 19, which said deed to the defendant Rowland, who was an employé of the Davis Lumber Company, and who received said title and held the same for said Davis Lumber Company with full knowledge and notice that the said Roberts held said title in trust for said partnership, was fraudulent as a matter of law.

"4. That the said Davis Lumber Company, on January 3, 1894, caused said Rowland to convey said title to the defendant Stevens, Sr., who received said title to said undivided one-half of lot 19 with full knowledge and notice that said Davis Lumber Company had procured said deed to be made by Roberts to said Rowland, as here-

inbefore set forth; that neither the said Rowland nor the said Stevens were *bona fide* purchasers of said undivided one-half of lot 19, in Cain Place.

"5. That the said deed from Roberts to Rowland and the said deed from Rowland to Stevens, Sr., were fraudulent in law and void, and should be canceled of record.

"6. That when the said Spotswood received the said title to said land, including the undivided one-half of lot 19, he executed a purchase-money mortgage of $22,500 to Martha M. Ish, guardian of James C. Ish, a minor; that the said Martha M. Ish, guardian, conveyed one note of $11,450 to Sarah Ainscow for the sole use and benefit of her brother, Edward Ainscow, and retained the other note of $11,050; that Cain Place was platted into nineteen lots, and dwelling-houses were erected on eighteen of those lots; that the said mortgage on said land was paid at and during the erection of said eighteen houses, except said lot 19.

"7. That the said Star Union Lumber Company, from time to time, paid cash to the said Ish and delivered lumber to said Ish, and finally settled with the said Ish by executing and delivering its notes to the said Ish, who retained the original note and mortgage until said notes were paid, as security for his debt; that the Star Union Lumber Company paid the note held by the said Sarah Ainscow by delivering lumber to said Ainscow in the sum of about $600 in excess of the amount due on said note held by said Sarah Ainscow prior to its failure in September, 1893.

"8. That at the time the Star Union Lumber Company failed it assigned all its property to the Davis Lumber Company, and in consideration thereof the Davis Lumber Company assumed and agreed to pay all the indebtedness of the Star Union Lumber Company, and did thereafter pay to said Ish the sum of $500 in cash to take and satisfy the balance due on said note given by said Star Union Lumber Company to said James C. Ish, in full settlement of the balance due said Ish prior to its assignment to the Davis Lumber Company.

"9. The court further finds, from all the facts, circumstances, and evidence in the case, that said mortgage made by said Spotswood to said Martha M. Ish, guardian of said James C. Ish, a minor, has been fully paid and satisfied, and that the assignments made by said James C. Ish and Sarah Ainscow to the Davis Lumber Company were without consideration, null and void, and of no force and effect.

"10. The court further finds that the Star Union Lumber Company had no interest whatever in the said undivided one-half of said lot 19, in Cain Place, by reason of any lien or interest therein, but that the said Star Union Lumber Company was simply a creditor of said partnership of Stevenson, Spotswood & Bohn, and have never reduced their said claim against said partnership to judgment, and said Davis Lumber Company has no greater rights than said Star Union Lumber Company.

"11. That at the time said Star Union Lumber Company paid certain money to said James C. Ish and delivered certain lumber to Martha M. Ish on account of said James C. Ish, and made full settlement with said James C. Ish and delivered to the said Ish its notes representing the balance unpaid on the note retained by Ish, and at the time the said Star Union Lumber Company agreed with the said Edward Ainscow, for whose use and benefit the mortgage had been assigned to his sister, Sarah Ainscow, to pay the balance to the said Ainscow upon the note held by him, there was no agreement or understanding between the said Ish and the said Star Union Lumber Company, and between the said Ainscow and the said Star Union Lumber Company, that the said Ish or the said Ainscow should assign said notes and mortgage to said Star Union Lumber Company, but on the contrary it was the intention and design of said Star Union Lumber Company to pay and satisfy said notes and mortgage, and that it was not contemplated by or understood by either of the parties thereto that the said Star Union Lumber Company was purchasing either of said notes or was to have an assignment of said mortgage.

"12. That said notes secured by said mortgage were past due at the time of the failure of the said Star Union Lumber Company, in September, 1893, and at the time of the assignment by Ish and Ainscow of said mortgage to said Davis Lumber Company, in March, 1894, and that the said Davis Lumber Company received said notes and assignment of said notes and mortgage from the said Ish and Ainscow with full knowledge and notice in law that the said notes had been paid, and said mortgage should be canceled of record."

There were further findings in the decree, but on points other than we need specifically notice at this time.

It is contended for appellants that the evidence was of such effect that there should have been, and should be now, a finding contrary to the one made by the trial court with reference to the litigated points of whether the debt evidenced by notes and mortgage which were given to Mrs. Ish when the land, which, when platted, was known as Cain Place, was purchased of her, was paid, and in fact discharged, or whether what was done constituted, in effect, a purchase of the securities, and the assignments then made were valid, effectual, and enforceable. The evidence has been presented here by printed abstract. It is somewhat complicated and is conflicting, but a careful examination of it leads to the conclusion that the finding of the district court to the effect that the debt of the notes and mortgage was paid is supported by evidence, or it is not clearly wrong; hence we will not disturb it. The appellants, it will be seen by portions of the answer herein quoted, rested their defense on the claim that the notes and mortgage had not been paid, but in effect bought and assigned; but now it is argued for them that if the assignment must fail, then they are entitled to invoke the doctrine of subrogation and to relief by reason of it. To this it must be said that they rested their defense on the rights derived from what they pleaded was in effect a purchase of the notes and mortgage and the assignment of them, and expressly denied any payment,

Subrogation herein must have rested in payment and some reasons recognized in equity for placing the parties in place of the ones on whom the debt rested and practically in whose stead payment was made. There was no such defense proffered or interposed, and it can be of no avail now.

The finding of the district court, as to which it may be said there is more of doubt than any other, is the one which underlies or is the basis of the portion of the decree by which it was determined the asserted transfer of the title to the property to John Stevens, Sr., was effected was fraudulent; but when the evidence which has more particular reference to this transfer is considered in connection with all the facts and circumstances of the whole transaction and the intent which the court decided was elemental of it, also the relationships of the parties, the claims made in the pleadings, and the evidence and lack of it, we cannot say the finding was without support, or rather that it was manifestly wrong. (*Millard v. Parsell*, 57 Neb. 178.) The judgment must be

AFFIRMED.