325 P.2d 408

Charles I. CREED, Appellant,

v.

STATE EQUIPMENT & SUPPLY, Inc., an Arizona corporation, Appellee.

No. 6186.

Supreme Court of Arizona.
May 7, 1958.

154

Brice R. Bishop and Donald R. Kunz, Phoenix, for appellant.

Wilmot Trew and Stockton & Karam, Phoenix, for appellee.

WINDES, Justice

Pacific Western Enterprises, Inc., hereinafter designated as Western, was engaged in the business of manufacturing refrigeration equipment and had become indebted to the State Equipment & Supply, Inc., plaintiff in the trial court, in the sum of $16,869.40 which was past due and unsecured. Western was in need of additional operating capital. All dates hereinafter mentioned refer to 1952 unless otherwise designated. On March 4th, the board of directors of Western authorized its president E. C. Mitchell to borrow from Charles I. Creed, defendant below and hereinafter referred to as defendant or Creed, not to exceed $25,000. On April 8th a contract was entered into between E. C. Mitchell and K. D. Berdan, president and director of Western, and the defendant whereby defendant purchased from them a majority of the outstanding stock of Western. In this agreement it was further stipulated that defendant would advance and loan to Western no less than $20,000, the corporation would give its notes secured by mortgage if and when defendant required. Defendant further agreed to secure from existing creditors of Western extensions of time for the payment of their claims and agreements from them subordinating their claims to the defendant including any collateral furnished by Western. Creed secured from plaintiff such an agreement as hereinafter related. Loans were made by defendant to Western, mortgages given to secure the same and a purported foreclosure and purchase made by Creed of all the property of Western. Plaintiff sued Western for the balance due and Creed for conversion of Western's property. Western defaulted and judgment was rendered against it. Verdict and judgment for the plaintiff against Creed in the sum of $3,333.33. Creed appeals.

There are several assignments of error and answers to some control the answers to others. Consequently, we are treating them in such order as seems advisable. The trial court's interpretation of the subordination agreement between plaintiff and defendant acting for Western is questioned. Western admittedly owed plaintiff $16,869.40. The subordination agree-

ment executed by plaintiff and by Creed as general manager of Western provides that Western would pay $4869.40 on account and the balance of $12,000 was to be paid at the rate of $1,000 per month, deferred payments to bear 6 percent interest; that Western would use its best efforts to secure no less than $20,000 additional working capital "all within 30 days from the date hereof"; that if such additional capital was acquired by a loan and security was required to be given, plaintiff agreed that the balance of its claim would be subordinated to such loan and security. The contract also provided:

> "In the event the additional working capital contemplated hereunder is not realized within the time hereinabove specified, then the balance owing on the account between the parties hereto shall thereafter become due and owing in full."

The court's instruction to the jury concerning the contract was to the effect that unless Creed within 30 days from its date loaned Western no less than $20,000 and required security therefor, plaintiff's claim was not subordinated to that of Creed's. We think this is the proper interpretation of the contract. Clearly, its object was to get from plaintiff an extension of time. If the additional working capital was obtained by secured loan, plaintiff was to subordinate its claim. To us this means that if the capital was obtained and secured within the time given therefor, clearly plaintiff's claim would be subordinated. This means also that if the capital was not secured as agreed, there would be no subordination. It certainly was not intended that the subordination agreement run indefinitely and the contract otherwise be terminated. When the capital was not secured within the time specified, the plaintiff's claim became immediately due. The facts are that within the 30-day period only $3,000 had been advanced by Creed and no security had been given. There was no occasion to submit this question to the jury but its decision on the question cures any possible error. The result of this interpretation is that Creed's preference rights cannot be enlarged by the subordination agreement. His rights must be measured by the general rules of law and equity.

■ The foregoing contract is of course one between plaintiff and Western. This presents the question as to what effect, if any, such agreement has upon the preference rights of Creed, a majority stockholder, chairman of the board of directors and general manager of Western. While under some conditions an officer or director of a corporation may secure a priority over other creditors he cannot acquire such a preference by illegitimate or inequitable means.

As the facts reveal, Creed as a creditor acquired all the assets of Western leaving the plaintiff-creditor with nothing to satisfy its claim. Whether this may be done requires an analysis of the circumstances surrounding the entire transaction. On March 4th the board of directors was authorized to borrow from Creed $25,000. On April 8th, according to the minutes of a board meeting Creed submitted a proposal that he purchase a majority of the stock from two members of the board and loan the company no less than $20,000, the company to give security by way of pledge or mortgage and procure from existing creditors agreements extending the time of payment and subordinating their claims to that of Creed. This proposal was accepted by the board and the sale of stock to Creed was consummated. On the same day, April 8th, Creed as a general manager of Western entered into the subordination agreement heretofore mentioned. Ten days later Creed was elected a member and chairman of the board and continued as general manager. On May 14th, at a board meeting with defendant acting as chairman a resolution was unanimously passed authorizing the company to borrow from defendant not to exceed $75,000. By June 19th Creed had advanced to the company approximately $28,000 and was given the company's demand note for this amount secured by a chattel mortgage for $25,000 on all the physical assets of the company except accounts receivable, cash and claim to certain patents. By July 7th defendant had advanced approximately $66,000 and the company gave another demand note in the sum of $40,000 secured by another chattel mortgage on all of the company's property. Sometime in June defendant moved the business from Tempe to a building owned by him in Phoenix.

In November defendant commenced changing the name on the building and some trucks owned by Western from Pacific Western to C. & M. Mfg. Co., a company under which Creed operates a personal business. At a stockholders' meeting on December 2nd, according to the minutes, Creed, the majority stockholder, present and participating, it appears that he reported that his demands were far in excess of company assets and the company was insolvent and demanded that something be done or he would immediately foreclose. The minutes recite that a majority of the stockholders present agreed that Creed had a prior claim over other creditors and there was "no alternative but to accede to the offer of Chas. T. Creed, who agrees to accept a bill of sale to the property of the company in complete extinguishment of his indebtedness." At this meeting a resolution was unanimously adopted authorizing a bill of sale to all the property of the company. This resolution

recites it was in acceptance of Creed's offer to cancel his loans and it authorized the proper officers to execute the bill of sale and turn over the assets in full payment of loans made and to avoid chattel mortgage foreclosure. This resolution further provides that Creed was to retain possession of the notes and mortgages to be used in resisting any claims asserted by creditors. The bill of sale was executed and possession taken by Creed and at the trial he testified he then claimed only by reason of the bill of sale. Thereafter he continued to operate the business under the name of C. & M. Mfg. Co., using the raw materials and selling completed units, until upon advice of counsel defendant under the provisions in the mortgage put the property up for sale and purchased it on January 31, 1953, for the sum of $7,500.

In the light of this picture and our interpretation of the subordination agreement, which was negotiated by Creed, we fail to see how he has a prior right to appropriate all this property and blot out plaintiff's rights as a prior creditor. He knew when he loaned the money to the company the conditions under which such loans were to become prior to plaintiff's debt. Western had no right to give him priority contrary to the provisions of its subordination agreement and as a majority stockholder and chairman of the board, he certainly could not vote himself one to the detriment of plaintiff.

█ We are satisfied that the undisputed evidence shows that as a matter of law Creed did convert all the property of Western. It is admitted the bill of sale under which he took was void. He had no right to assume possession and operate Western's business. After so converting the property, upon advice of counsel he shifted his position and attempted to acquire the property by a purported foreclosure of one of the mortgages. The trial court feeling that possibly only part of the property was converted instructed the jury that a conversion of part amounted to a conversion of all. Under the facts this instruction was erroneous. It is only under certain conditions that this rule obtains. Since, however, we hold that this defendant did convert the entire property, the giving of the instruction had no legal effect on defendant's rights.

Defendant argues he is entitled to recoup the amount of his claim and if he were liable in conversion it would only be for the excess of the value of the property converted over the amount of his claim. This contention is necessarily bottomed upon the proposition that defendant's claim is prior to plaintiff's. Since we hold it is not, the principles of recoupment cannot operate.

█ Contention is made that plaintiff's rights are derivative and that since Western

158

had no right of action for conversion against Creed, the plaintiff had no such right. Of course, it is hardly possible for the corporation to sue Creed for appropriating its property when he controls the corporation and is in a position to dominate its actions. Whether a minority stockholder could bring such a suit for the corporation is not before us, but we have no difficulty in finding that an injured creditor, who had been thus wronged by acts which the corporation could not legally allow, may recover against the one converting. German Nat. Bank v. First Nat. Bank, 55 Neb. 86, 75 N.W. 531.

■ Defendant says there is no evidence of market value whereby the jury could measure plaintiff's damages. The property was sold at forced sale to Creed for $7,500. While the amount property brings at forced sale may not be the correct measure of market value, yet it is reasonable to assume that it is worth at least the amount it will sell for under such conditions. The verdict being for less than half the amount Creed paid at the purported foreclosure, there was ample evidence of value.

Judgment affirmed.

UDALL, C. J., and PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.