IN RE ESTATE OF THOMAS BAYER.
ANNA HAMILTON ET AL., APPELLANTS, V. ANTON M. BAYER ET AL., APPELLEES.

FILED MARCH 26, 1928. No. 26318.

*Lewis C. Paulson*, for appellants.

*C. P. Anderbery* and *King & Bracken, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

EBERLY, J.

This action was originally commenced by Anna Hamilton in the county court of Kearney county, Nebraska, by filing a petition therein to probate an instrument alleged by her to be the last will of Thomas Bayer, deceased. Notice of pendency of proceedings was given by publication in the manner provided by law. Certain objections were filed by a brother and two sisters of the proponents. The trial which followed resulted in a decree in the county court admitting the instrument to probate. The contestants appealed to the district court. By stipulation it was there

agreed that the cause should be "tried in the district court upon the pleadings filed in said cause in the county court as included in the transcript on file therein." No guardian *ad litem* had been applied for or appointed by the county court. Neither was there any subsequent application made by way of the parties to be relieved from the terms of the stipulation above quoted. The trial in the district court resulted in a judgment determining that the instrument offered was not the last will and testament of the deceased. From this decree Anna Hamilton and John Bayer et al. have appealed.

The first question presented here is, that the failure of the district court to appoint a guardian *ad litem* for certain minor appellants who are alleged to be minors constituted reversible error. The question was presented in the form of objections made by the proponents and by the minors involved through and by next friends.

The controlling statutory provision seems to be the following, section 1258, Comp. St. 1922, which provides: "When any will shall have been delivered into or deposited in any probate court having jurisdiction of the same, together with a petition for its probate, such court shall appoint a time and place for proving it"—and give public notice thereof by publication as in the section referred to specified. There is no provision for special service on minors. Neither are there any express requirements in chapter 15 (secs. 1220-1488) Comp. St. 1922, for the appointment of a guardian *ad litem* for minors in such proceedings. This court has determined that the proceedings in the probate court to settle the estate of a decedent is a proceeding *in rem*, and every one interested is a party in the probate court whether named or not. *In re Estate of Sweeney,* 94 Neb. 834.

Section 8533, Comp. St. 1922, relied upon by appellants, would seem to have no application to this case, because its terms are limited to the requirement that the defense of an infant must be by a guardian *ad litem*. Assuming the minors in the instant case are parties in interest, the na-

ture of the case and the nature of their rights are such that the necessary steps to maintain them cannot be considered as "a defense." The procedure, if any, required in their behalf, is rather in the nature of an "affirmative action." It is "offensive," not "defensive," in its general nature. Speaking generally, the burden of proof is upon the proponents, and not upon the contestants. It would appear, indeed, that sections 1588 and 8531, Comp. St. 1922, properly construed, authorize and provide for intervention by infants in probate proceedings when deemed necessary or advisable to advance their interests through and by a "next friend." The record before us discloses that this actually occurred in the instant case. Therefore, no error could possibly have been committed in the refusal to appoint a guardian *ad litem* under the facts as disclosed by the record. This conclusion appears to have the support of the following: "A guardian *ad litem* need not be appointed in a probate court, if the statutes instituting and regulating the practice in such courts do not require such appointment." 31 C. J. 1120. In the absence of any statutory requirement to that effect, the appointment of a guardian *ad litem* for infants interested in the probate of a will is unnecessary. *Mousseau's Will*, 30 Minn. 202.

The next question presented is as to the admissibility of the testimony of a witness who was an attorney actively engaged in the trial of this case on the part of the contestants, and who had been engaged and consulted by the deceased in his lifetime with reference to the disposition of his property by will. This evidence discloses without question that in 1921 the deceased sent for this attorney and expressed to him in general terms the disposition of his property he desired to make by will, and employed the latter to prepare such instrument. The attorney was then given time to "figure out some way" to accomplish the desired end. A second conference was also held between these parties on the same subject. The attorney being somewhat delayed in executing this commission, he was still later advised by the deceased "to pay no more

attention to the employment," that it "was already fixed." The evidence given by this witness in the present case discloses the oral instructions received by him from his deceased client, and the substance of the conversation had between them in relation thereto. This evidence was admitted in the district court over the objections of the proponents of the will, and, if competent, was material in view of the issues then being tried.

It is thought proper at this time to suggest that the canon of professional ethics applicable to the situation before us is: "When an attorney is a witness for his client except as to formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the cause to other counsel. Except when essential to the ends of justice, an attorney should scrupulously avoid testifying in court in behalf of his client." American Bar Ass'n Canons of Ethics (1926) 142, sec. 18. The above has been fully approved by this court. *Wilson v. Wilson*, 89 Neb. 749; *Cox v. Kee*, 107 Neb. 587.

Under the admitted facts in the record, there can be no question as to the employment of this attorney by the deceased. It has been held: "An attorney, in receiving the directions or instructions of one intending to make a will, although he asks no questions and gives no advice, but simply reduces to writing the directions given to him, still acts in a professional capacity and is prohibited from disclosing any communication so made to him by his client." *Loder v. Whelpley*, 111 N. Y. 239.

Indeed, this court is committed to the doctrine that privilege attaches to "statements made to an attorney, with a view to his employment in the litigation in which he is called to testify, * * * even though no fee has been paid and the attorney subsequently refuses a retainer." *Fimple v. State*, 104 Neb. 471.

The essential question presented by the record is, therefore, where an attorney is duly employed and counseled with in reference to drawing a will which was never executed, after such employer's death may such attorney tes-

tify to such client's communications thus made while the relation was still in existence? The appellees answer in the affirmative, cite certain authorities, and contend that *Brown v. Brown,* 77 Neb. 125, to a limited degree "appears to be the only Nebraska case where this point has been presented or decided.". This case, however, discloses that this conclusion hardly is supported by the case cited. It appears in, *Brown v. Brown, supra,* the attorney who drafted the will was also an attesting witness thereto. The ground of the decision of this court appears in the following quotation: "While section 333 of the Code prohibits the disclosure of confidential communications made to a practicing attorney, and certain other classes of professional men, the next section provides that such prohibition may be waived by the party in whose favor it was enacted. When a will is offered for probate, the witnesses thereto may be examined at length as to the mental capacity of the testator, and the facts and circumstances attending its execution. And the testator, by permitting his attorney to become a witness to the will, thereby consented that he might be examined as a witness to such matters after his death." See, also, *McMaster v. Scriven,* 85 Wis. 162, 39 Am. St. Rep. 828; *Blackburn v. Crawfords,* 3 Wall. (U. S.) 175; *Denning v. Butcher,* 91 Ia. 425; *In re Will of Coleman,* 111 N. Y. 220; *Daniel v. Daniel,* 39 Pa. St. 191; *Western Travelers Accident Ass'n v. Munson,* 73 Neb. 858.

It is true the opinion also cites approvingly 3 Jones, Law of Evidence, sec. 773. However, the further statement is made in connection with the rule cited: "But it is not necessary to go to that extent in this case, the waiver to be implied from permitting the attorney to attest the will as a witness being sufficient ground for the admission of the evidence in question." *Brown v. Brown, supra.*

Even in New York where the doctrine on the general subject before us is admittedly opposed to appellees' contention, the doctrine of *Brown v. Brown, supra,* is approved. *In re Will of Coleman,* 111 N. Y. 220. See, also, *Knepper v. Knepper, Exr.,* 103 Ohio St. 529. The con-

clusion therefore follows that the determining point in the instant case has not been heretofore considered or decided by this tribunal.

A consideration of other authorities cited by appellees discloses that they are merely the announcement of the rule as to "privilege" at common law or relate to construction of statutes and application held to be merely declaratory of the common-law rule.

In this state it is thought the question presented here is controlled by our own statutory provisions: Sections 8835, 8840, 8841, Comp. St. 1922.

Sections 8840, 8841, Comp. St. 1922, above referred to, were first adopted as part of "an act adopting certain parts of the Code of Iowa duly passed by the territorial legislature of Nebraska in 1855." They constituted sections 841 and 842 of that act, and were continued in force as sections 6 and 7, chapter 33, of "an act respecting practice and proceedings in courts of justice and other purposes," passed by the territorial legislature in 1857, and as sections 315 and 316 of "an act to establish a Civil Code of Procedure" in force April 1, 1859, and also as appears in our present Code adopted in 1866. The two sections now under consideration were never amended, and from the time of their original enactment in 1855 have been continuously in full force and effect, and in the following form:

"No practicing attorney, counselor, physician, surgeon, minister of the gospel or priest of any denomination, shall be allowed in giving testimony to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." Comp. St. 1922, sec. 8840.

"The prohibitions in the preceding sections do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred." Comp. St. 1922, sec. 8841.

Appellees cite the case of *Winters v. Winters*, 102 Ia. 53.

We note that this opinion is in fact an interpretation of section 3643 of the Code of Iowa which is identical with section 8840, Comp. St. 1922, and substantially includes, in addition, the substance of our section 8841, Comp. St. 1922. As this section is interpreted by the supreme court of Iowa in the above cited case, it permits the physician and attorney therein referred to to testify as to matters embraced in the terms of the statute after death of the client in a contest or dispute between devisees or legal representatives and heirs at law, all claiming under the deceased. The decision proceeds on the basis that the statute in question is but declaratory of the common-law right so far as attorneys were concerned, and extends its protection to physicians and other classes named therein only to an equal degree; that, at common law, in controversies between heirs at law, devisees and personal representatives, the claim that the communication was privileged could not be urged, and therefore this provision of this Iowa statute being merely declaratory of the common law would not exclude them.

In *O'Brien v. Spalding*, 102 Ga. 490, cited by appellees, the controlling statute was not couched in language identical with the Nebraska statutes now under consideration, but, as construed by the supreme court of Georgia, did no more than to declare the rule at common law.

*In re Young's Estate*, 33 Utah, 382, also cited by appellees, so far as applicable to the case before us, may be stated as: "The mere fact that the common-law privilege is declared in statutory form does not extend the scope of its operation," the gist of the decision being that the Utah statute construed by the court was no more than a declaratory enactment preserving the common-law privilege.

Appellees also cite *Doherty v. O'Callaghan*, 157 Mass. 90, and *Phillips v. Chase*, 201 Mass. 444, as sustaining their contention. The question determined in the first case is well stated in the language of that eminent court, as follows: "The question before us, however, is not what con-

struction is to be given to the language of a Code, but what is the. rule at common law, and the further question whether the case at bar comes within the rule." *Phillips v. Chase, supra,* cites as controlling on the point before us the case of *Doherty v. O'Callaghan, supra.* It follows that the two authorities last referred to are applicable merely as determining the extent of the common-law privilege in favor of clients, and as binding upon attorneys.

However, eight years after the adoption of sections 8840, 8841, Comp. St. 1922, the laws of this state were amended, and section 8835, Comp. St. 1922, was so changed to read as follows: "Every human being of sufficient capacity to understand the obligation of an oath, is a competent witness in all cases, civil and criminal, except as otherwise herein declared. The following persons shall be incompetent to testify: * * * An attorney concerning any communication made to him by his client in that relation or his advice thereon, without the client's consent in open court or in writing produced in court." This latest and controlling statute would seem to determine the question before us.

In consideration of this legislative enactment, the following principles are deemed important: To ascertain the intent of the legislature is the cardinal rule in the construction of statutes. *People v. Weston,* 3 Neb. 312; *State v. Moore,* 45 Neb. 12; *Little v. State,* 60 Neb. 749; *Nebraska Railway Co. v. Van Dusen,* 6 Neb. 160.

"In the construction of a statute, courts will take judicial notice of events which are generally known, and matters of common knowledge within the limits of their jurisdiction." *Redell v. Moores,* 63 Neb. 219. The course of legislation may also be considered. *Campbell v. Youngson,* 80 Neb. 322.

But where the words of a statute are plain, direct, and unambiguous, an interpretation is unnecessary. *Stoppert v. Nierle,* 45 Neb. 105. And, "The court will not read into a statute exceptions not made by the legislature." *Siren v. State,* 78 Neb. 778; *State v. School District,* 99 Neb. 338.

Conceding, for the purpose of this opinion, but not so determining, that sections 8840, 8841, Comp. St. 1922, prior to the enactment of the amendment to section 8835, Comp. St. 1922, in 1866, could well be construed as but declaratory of common-law privilege in statutory form (which would not extend the scope of its operation in view of the authorities cited by appellees), and would sustain the rule of evidence applied in the lower court which admitted the testimony objected to, would we be justified in accepting the view that the amendment to section 8835, *supra*, failed to alter the situation that prevailed prior to its adoption? The conclusion it seems is inevitable, in view of the substance of that amendment and the course of legislative history that preceded it, that in its enactment a change was intended by the legislature. If no change was intended, why was amendment made? The extent of change effected must be gleaned from the amendment itself. It must be conceded that the words of this statute are plain and simple.

With reference to communications received from clients during the existence of the relations, attorneys are declared incompetent to testify.

The statute also expressly enjoins that the question of the competency of an attorney as a witness in a case can be waived only by the consent of the client in open court or in writing produced in court. This statutory language, directed to the subject of "incompetency of witnesses," expresses a definite legal idea. *Wamsley v. Crook and Hall*, 3 Neb. 344.

The difference in legal effect between a statute rendering a witness incompetent, and a statute making the testimony of a witness incompetent, is well understood and has been judicially declared in this state. *Sharmer v. McIntosh*, 43 Neb. 509.

In view of the simplicity of the language employed, it would seem that the court can read into this statute no exceptions or no terms that the legislature has omitted therefrom. The conclusion necessarily is, we are bound

to enforce it as the latest expression of legislative intent without any unexpressed common-law qualifications of its terms.

We are not without authority for this conclusion. As will be seen by the opinion in *Winters v. Winters*, 102 Ia. 53, cited by appellees, New York had followed for many years the practice the parties seek to uphold in the instant case. *Allen v. Public Administrator,* 1 Bradf. Sur. (N. Y.) 221. But in 1877 an amendment to the then New York Code was made which appeared subsequently as sections 834, 835, 836. So far. as they relate to the subject here under consideration, the important provision was: "An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment." A subsequent section to the language quoted provided that the foregoing section should "apply to every examination of a person as a witness, unless the provisions thereof are expressly waived by the * * * client."

The New York supreme court, in construing these sections, held: "Without further discussion or citation of authorities, we think the statute admits of no other construction than that, where the evidence comes within the prohibition of the statute, its reception, if objected to, can be justified only when the patient, penitent, or client, as the case may be, waives the protection the statutes give him." *Westover v. Ætna Life Ins. Co.*, 99 N. Y. 56.

In a still later case the supreme court of New York determined: "The prohibition of the Code of Civil Procedure (sec. 835) against the disclosure by an attorney of a communication by his client to him or his advice thereon, in the course of his professional employment, applies to instructions given, by one proposing to execute a will, to an attorney employed to draw it, and to conversations had with the attorney for the purpose of enabling him to carry out the instructions." *In re Will of Coleman,* 111 N. Y. 220. See, also, *Loder v. Whelpley,* 111 N. Y.

239; *In re McCarthy's Will,* 20 N. Y. Supp: 581; *Butler v. Fayerweather;* 91 Fed. 458.

It is to be noted in this connection that the identical language of the New York statute is embodied in the Nebraska amendment now under consideration, and that the provisions as to waiver are more limited in the Nebraska statute than in the New York enactment.

The exact question here involved was recently determined by the supreme court of Ohio. In all of its essentials the Ohio statute is substantially the Nebraska statute under consideration. It is section 11494 of the general Code of Ohio. This section of the Code, so far as pertinent here, reads as follows: "The following persons shall not testify in certain respects: 1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; * * * but the attorney * * * may testify by express consent of the client; * * * and if the client * * * voluntarily testifies, the attorney * * * may be compelled to testify on the same subject." *Swetland v. Miles,* 101 Ohio St. 501. The question decided by the Ohio court in the case above is as follows: "Was the testi-' mony of one C. V. Trott, an attorney at law, who was consulted in that relation by the testatrix in reference to the paper writing, competent? Those supporting the will offered said Trott as a witness, and sought to introduce the communications of Phoebe Thompson made to him, and his communications to Phoebe Thompson; but particularly the former." The case itself was a will contest, and the communications were held inadmissible. The following excerpt from the opinion of the court by Wanamaker, J., is pertinent to the matter under consideration: "Is there any room for doubt as to the scope or meaning of this statute? If there is no room for doubt as to its scope and meaning, there is no right to construe, for the judicial right to construe is wholly based upon the presence of doubt as to the meaning of the statute. There is abundant reason for this rule. Every bar association, state and national, has for years bemoaned the growing uncertainty and con-

fusion in our laws, much of which the courts themselves are responsible for, by undertaking to make cloudy legislative acts that are clear; by undertaking to place limitations upon legislation that is absolute and unlimited, rendering doubtful the general and all-comprehensive provisions of the statute by reference to some suggested reason for the law. All these rules of construction or interpretation are helpful and illuminating where there is doubt as to the meaning of the statute, but they serve no duty where there is no doubt. * * * Now it is urged that this court should read into the statute another exception, to wit, 'that if the client be dead, her personal representative or heirs should waive the right for her.' This squarely involves so-called judge-made amendments to legislative acts that are otherwise clear and unmistakable as to meaning. In reason there is much force in the logic of plaintiff in error as to the relevancy of this testimony; but the statute, which is clear and explicit, expressly says that the attorney *shall not* testify." The supreme court of Ohio unanimously concurred in the adoption of the above opinion by which the evidence proffered was held inadmissible. *Collins v. Collins,* 110 Ohio St. 105.

In view of the legislative history of the matter under consideration, and the perfect simplicity of the terms of the amendment of 1866, it would seem that the principles announced by the supreme courts of Ohio and New York are applicable to the question presented here and are controlling. It follows that the district court, in admitting the testimony of the attorney, over the objections, committed reversible error.

The appellants urge certain objections to instructions given and refused on the subject of competency of Thomas Bayer, deceased. Their consideration would serve no good purpose in the present case. Indeed, the trial court should have withdrawn the question of competency from the jury, the evidence in the record being wholly insufficient to sustain a finding in favor of the contestants on that issue.

It may be said that instruction No. 4, as given by the

court on its own motion, so far as it pertains to the subject of competency, is not commended. Nor, in view of the fact that another trial will be had with possibly other and different evidence, has the subject of the sufficiency of the evidence on the issue of alleged undue influence received any consideration whatever.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Infants, 31 C. J. 1120 n. 76—Witnesses, 40 Cyc. 2232 n. 73, 2233 n. 75, 2361 n. 81, 2380 n. 19, 2405 n. 15; 49 L. R. A. n. s. 442; 28 R. C. L. 469, et seq.; 4 R. C. L. Supp. 1825.