IVAN VAN STEENBERG, GUARDIAN OF PETER M. NELSON, INCOMPETENT, APPELLEE, v. JOSEPH W. NELSON ET AL., APPELLANTS.

22 N. W. 2d 414

FILED MARCH 29, 1946. No. 32017.

*Torgeson & Halcomb*, for appellants.

*Kuns & Van Steenberg*, and *W. H. Kirwin*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This is an equity action in the nature of a creditor's bill. It was instituted by the guardian on behalf of his ward, Peter M. Nelson, incompetent because of age and disability. Defendants are the ward's son, Joseph W. Nelson, an ex-

tensive farmer and rancher in western Nebraska, his wife, Nellie L. Nelson, and their son, Billie Nelson. Hereafter for brevity they will be designated by their first names. On November 16, 1931, Joseph and his wife, Nellie, who then had no separate property of her own, made, executed, and delivered to the father their promissory note, due two years from date. Its consideration was a preexisting bona fide indebtedness owing by Joseph to his father. The note was unpaid except in small part, and on November 23, 1943, the guardian recovered judgment thereon against the makers in the sum of $6,657.35, with interest at eight percent. The judgment was wholly unpaid and execution was returned unsatisfied.

The petition in the present controversy contains two causes of action. The first cause of action sought to have two bills of sale of personal property and a warranty deed to a quarter section of land declared fraudulent and void as to plaintiff's ward, and to have all the property involved therein, together with certain wheat and barley crops allegedly produced by defendant, Joseph, but claimed by defendants, Nellie and Billie, respectively, subjected to the payment of plaintiff's judgment. The bills of sale were dated May 8, 1934, and July 16, 1938, respectively, whereby Joseph conveyed all of his personal property, consisting of livestock, machinery, tools, farm equipment, tractors, trucks, cars, combines, etc., to his wife, Nellie. The warranty deed was dated March 18, 1941, whereby Joseph conveyed all of the real property then in his name to his wife, Nellie.

The second cause of action sought an adjudication that Joseph had an equitable interest in two other quarter sections of land, the fee title to all of which was taken in the name of Nellie, and that such equitable interest should be subjected to payment of the judgment. A one-tenth interest and a one-fifth interest in the latter two parcels of real property came to Nellie by inheritance in 1937, but the remainder of the fee was alleged to have been obtained by purchase thereafter. Both causes of action also contained

a prayer for such other and further relief as justice and equity might require.

Plaintiff's petition was traversed by defendant's answer to which plaintiff filed reply. Upon trial of the issues the trial court found generally for plaintiff. The decree found and adjudged in substance as follows: That the bills of sale were fraudulent and void as to plaintiff's ward; that the property involved in the warranty deed from Joseph to his wife was their homestead, the value of which at date of conveyance was less than $2,000 above encumbrances, therefore, the deed was not void as to creditors, although given to hinder, delay, and defraud them; that at all times involved after the conveyances Joseph, for his own benefit and with the intent to defraud creditors, of which the wife had knowledge, conducted farming operations upon that land in connection with and upon other lands without any change of possession of property or manner of operation. That defendant, Billie, had no interest in $676.38, money in the hands of the clerk of the district court resulting from the sale of certain barley which belonged to Joseph. Therefore, that sum was ordered paid to the plaintiff to apply on the principal of the judgment. That between 1935 and 1941, defendant Nellie, partly by inheritance and the remainder by purchase, acquired the fee to the two other quarter sections of land, which at all times thereafter her husband had farmed, with the machinery and farm equipment conveyed to his wife, raising large crop yields at great profit. That to hinder, delay, and defraud creditors Joseph and his wife used a large portion of such earnings and profits therefrom, the exact amount of which could not be determined, to pay off encumbrances on all the lands and erect valuable improvements upon the homestead then in the name of the wife. That they also used a portion of such profits, the extent of which could not be determined, to pay a part of the purchase price of the two other farms. That almost all the personal property conveyed by the bills of sale had been traded in upon the purchase price of other machinery and equipment, the balance whereof was paid

from Joseph's profits. That the exact items still held by Nellie and whether they may be claimed to be exempt from execution cannot be ascertained. That the separate estate of Nellie L. Nelson had by their confederation to defraud been enhanced in value from the earnings and profits of Joseph in an amount far in excess of the amount due the plaintiff from Joseph, and that she still owns and retains such enhanced value in her estate. Therefore, the court found, as a matter of law, that plaintiff should be given a personal judgment against defendant, Nellie L. Nelson, for the sum of $6,637.35, with interest at six percent from November 23, 1943, and costs, but the sum of $676.38, heretofore referred to, should be first applied upon the principal only. The court ordered that no property should be sold directly under the decree but that execution should be awarded and that Nellie should be given such homestead and personal property exemptions as are provided by law upon sales under execution.

The decree directed that any personal property still remaining but which was conveyed to Nellie by her husband in the bills of sale, and not claimed by law to be exempt, should be taken under execution and applied on the judgment before the sale of any other property. The second cause of action was dismissed without prejudice only as to such rights as were given plaintiff in the first cause of action. Costs were taxed to defendants jointly and severally.

Motion for new trial was overruled and defendants appealed assigning as error substantially that the judgment of the trial court was contrary to law and not sustained by the evidence. We find that these contentions cannot be sustained as to defendants, Joseph W. Nelson and Nellie L. Nelson.

In weighing the question whether the evidence is sufficient to sustain the decree, this court is governed by rules of law well established and binding upon equity courts. In Filley v. Mancuso, 146 Neb. 493, 20 N. W. 2d 318, this court approved the statement that "A conveyance is declared to be fraudulent when its object or effect is to defraud an-

other, or the intent with which it is made is to avoid some duty or debt due by or incumbent upon the party making the transfer." 27 C. J., Fraudulent Conveyances, § 11, p. 415. See, also, 37 C. J. S., Fraudulent Conveyances, § 7, p. 854.

At the outset in such cases it must be recognized that a conveyance between relatives which has the effect of hindering or delaying a creditor in the collection of his claim is presumptively fraudulent and, in litigation between the creditor and the parties to the conveyance over its alleged invalidity, the burden is on the parties to the conveyance to establish the good faith of the transaction. In that connection when it is charged that a conveyance between relatives was made to hinder, delay, and defraud creditors the question of good faith is ordinarily a question of fact and not of law and good faith may be established by proof of facts from which such inferences may reasonably be drawn. However, where the testimony relied upon to show good faith is given by interested relatives, the reasonableness or unreasonableness of the evidence bears considerable weight in arriving at a just conclusion. Filley v. Mancuso, *supra;* Bank of Brule v. Harper, 141 Neb. 616, 4 N. W. 2d 609; Hilton v. Clements, 137 Neb. 791, 291 N. W. 483.

It is also the rule that where a grantee, at the time the conveyance is made, had knowledge of the intent of the grantor to hinder, delay, and defraud his creditors by the conveyance of his property, the conveyance is void as to existing creditors whether or not an adequate consideration was paid. McBride v. Helmricks, 140 Neb. 843, 2 N. W. 2d 118.

Bearing those rules in mind we measure the evidence. It is too voluminous to recite here. To repeat it at length would extend this opinion far beyond propriety. Joseph did not testify at the trial. Only Nellie, his wife, attempted to justify their transactions. Suffice it to say, the record contains innumerable, ill-conceived, and matured transactions and conveyances relating to and including those recited in plaintiff's · petition which illustrate and demon-

strate beyond· any doubt a concerted plan or scheme, extending over several years, by which Joseph and his wife, Nellie, attempted to and did knowingly confederate to hinder, delay, and defraud Joseph's creditors, more particularly the plaintiff's ward. The evidence discloses beyond question that the wife, Nellie, still retains all the proceeds and profits therefrom, in one form or another, and that her separate estate has had the benefit thereof, being thereby enhanced in an amount far in excess of the amount due the plaintiff upon his judgment.

At this point it is well to state with reference to defendant, Billie Nelson, a minor but married, that we believe his rental of certain barley crop land from others was bona fide. However, although that fact may change the reasoning it does not change the final result except to dismiss him out of the case and relieve him from liability for costs. His testimony, not in conflict with his answer filed herein, was to the effect that his mother was to have one-third of the barley crop for the use of farm machinery, one-third was to be paid the landlord for rental, and one-third belonged to him. The record discloses that the landlord's one-third was delivered in the field and defendant, Billie, sold his one-third and received the money therefor. Evidently the remainder of the crop was that portion which the trial court found as a matter of fact belonged to the father. It was sold by stipulation after this action was instituted, and represented the $676.38 remaining in the hands of the clerk of the district court, which we find that the trial court correctly ordered applied upon the principal of plaintiff's judgment.

We turn then to the question of whether the decree was contrary to law. That question is also governed by well-established precedent in this jurisdiction. It was held in Burnham v. Bennison, 121 Neb. 291, 236 N. W. 745: "The general rule of equity pleading which is preserved by our Code is that, if there is a prayer for general relief, as well as for special relief, the court may extend the relief specially prayed for and give such other relief as the case war-

rants, consistent with the general frame and purpose of the petition." In Miller v. Knight, 146 Neb. 207, 19 N. W. 2d 153, it was said: " * * * where a suit in equity is properly brought and the court has jurisdiction of the subject-matter and all parties to the action, it is the duty of the court to adjudicate all questions and rights presented by the pleadings in order to do full justice to all the parties to it." As stated in Gibson v. Koutsky-Brennan-Vana Co., 143 Neb. 326, 9 N. W. 2d 298: "It is a long-established rule that a court of equity which has obtained jurisdiction for any purpose will retain jurisdiction for the purpose of administering complete relief between the parties with respect to the subject-matter."

Further as held in Bank of Brule v. Harper, *supra*: "A court of equity possesses the power to compel the application of a debtor's unexempt property to the payment of his debts when the creditor has no other means of redress.

"A court of equity will, when all other remedies have failed, at the suit of a creditor, take the unexempt property wherever found and in whatever condition it may be and cause it to be applied toward the payment of his debt."

In the latter case the wife's estate, as in the case at bar, was enhanced in excess of the amount due the plaintiff and the personal judgment rendered against her was less than she benefited by the conveyances. In applying the rules above quoted in that case this court held: "Where a husband and wife confederate to defraud creditors by transferring property of the husband to the wife, so that it cannot be reached by creditors of the husband, a personal judgment may be entered against the wife, provided it appears, or is clearly to be presumed, that she still retains the proceeds or her personal estate has had the benefit thereof." See, also, Sheldon v. Parker (on rehearing), 66 Neb. 634, 95 N. W. 1015.

In that connection we can only conclude that the pleadings in the case at bar were appropriately broad enough to sustain the decree of the trial court, and that it was in conformity with the law.

Bratrsovsky v. Nestor, 145 Neb. 614, 17 N. W. 2d 669, relied upon by defendants, is not entirely in point under the circumstances presented in this case. In conformity therewith the trial court correctly held that the homestead was not subject to fraudulent alienation when it was transferred by Joseph to his wife on March 18, 1941, because at that time the property transferred was worth less than $2,000 above the encumbrances and thereby exempt as provided by section 40-101, R. S. 1943. However, subsequently resulting from their confederation to defraud, the encumbrances thereon have been paid and some $2,000 of valuable improvements have been placed upon the property. The homestead is ordinarily subject to execution sale upon judgments against the holder of the title if its value exceeds $2,000. That limitation is solely for the purpose of fixing the rights of the homestead claimants and the creditors respectively. This is true because there is a distinction in the statutes between the homestead, which vests in the widow for life without regard to value upon the death of her husband without creditors, and the amount of the homestead exemption as against creditors. As said in Meisner v. Hill, 92 Neb. 435, 138 N. W. 583: "There is reason for preventing the investment of all one has in an excessively valuable homestead for the purpose of defrauding creditors." The latter statement has particular application in cases similar to the one at bar. Therefore, the personal judgment rendered herein against the wife would be enforceable thereon, subject to homestead exemptions, as provided by statute.

We can only conclude that the decree of the trial court was sustained by the evidence and conformed with the law in every respect except as to defendant, Billie Nelson, who should have been dismissed out of the case with all costs taxed jointly and severally to defendants, Joseph W. Nelson and Nellie L. Nelson. For the reasons heretofore stated, the judgment of the trial court is modified to that extent

and in all other respects is affirmed.

AFFIRMED AS MODIFIED.

PAINE, J., participating on briefs.