CLIFTON R. McCORMICK ET AL., APPELLEES, V. TILLIE F. McCORMICK, APPELLANT.

33 N. W. 2d 543

Filed August 10, 1948. No. 32420.

*Charles F. Adams,* for appellant.

*F. E. Edgerton, H. G. Wellensiek,* and *E. H. Powell,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Clifton R. McCormick and Paul A. McCormick, as plaintiffs, brought this action in the district court for Howard County against Tillie F. McCormick, as defendant. The purpose of the action is to establish and enforce an alleged trust in certain lands situated in Howard County which are held in the name of the defendant. From a decree in favor of the plaintiffs, her motion for new trial having been overruled, the defendant appeals.

The allegations of the amended petition are sufficient, if sufficiently established, to show a constructive trust in favor of the appellees. Pollard v. McKenney, 69 Neb. 742, 96 N. W. 679. And, as has often been stated by this court, a prayer for general relief in an equitable action is sufficient to authorize any judgment to which the parties are entitled under the pleadings and the evidence adduced in support thereof. Glissmann v. Bauermeister, 149 Neb. 131, 30 N. W. 2d 649; Johnson v. Radio Station WOW, on rehearing, 144 Neb. 432, 14 N. W. 2d 666; Van Steenberg v. Nelson, 147 Neb. 88, 22 N. W. 2d 414.

During the course of the trial one of appellees' counsel was sworn as a witness and although proper objection was made he was permitted to testify as to a conversation had with the appellant and to continue as active counsel. The nature of the conversation, as testified to by counsel, related itself directly to the principal issue involved in the case. Although the appellant admitted having had a conversation with this witness, she denied making the statements which he testified she had made.

This had the effect of causing their testimony to be in direct conflict on a material issue affecting appellant's rights.

By article X of the Rules Creating, Controlling, and Regulating Nebraska State Bar Association the canons of Professional Ethics of the American Bar Association were adopted as the ethical standards for the practice of law in this state. Canon 19 thereof provides in part as follows: "When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel."

The correct application of this principle is stated in 28 R. C. L., Witnesses, § 57, p. 470, as follows: "It is against sound principles of professional ethics for one who knows that he is to be called as a witness in a case, to accept the retainer as lawyer in that case. And where after retainer it is apparent to an attorney that his testimony will be material in behalf of his client, it is his duty to confer with his client and associate counsel at once and finally determine whether he will become a witness. If it is decided that he shall be a witness, he should immediately sever his connection with the litigation." See, Cox v. Kee, 107 Neb. 587, 186 N. W. 974; In re Estate of Bayer, 116 Neb. 670, 218 N. W. 746.

If this was an action at law wherein the credibility of this witness had been submitted to a jury, the trial court's ruling would constitute prejudicial error that would require a reversal. However, since the action is equitable in its nature wherein we consider the record de novo, it does not require a reversal but we will consider the record accordingly. However, it is a practice which should be discountenanced by the courts and which ought not be indulged in by counsel.

As to the creation of a constructive trust it is stated in Restatement, Restitution, § 183, p. 737, as follows: "Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of a

third person or upon an oral agreement to convey the land to a third person, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the third person, if, but only if, * * *. (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or (c) the transfer was made by the transferor in contemplation of death."

We have often approved the following, as stated in Pollard v. McKenney, *supra*: "* * * if a party obtains the legal title to property by virtue of a confidential relation, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, hold and enjoy the benefits; out of such circumstances or relations, a court of equity will raise a trust by construction and fasten it upon the conscience of the offending party and convert him into a trustee of the legal title." See, Koefoed v. Thompson, 73 Neb. 128, 102 N. W. 268; Smullin v. Wharton, 73 Neb. 667, 103 N. W. 288; O'Shea v. O'Shea, 143 Neb. 843, 11 N. W. 2d 540; Box v. Box, 146 Neb. 826, 21 N. W. 2d 868; In re Estate of Scott, 148 Neb. 182, 26 N. W. 2d 799; Watkins v. Waits, 148 Neb. 543, 28 N. W. 2d 206.

However, courts should not set aside the disposition of property made by will or deed without good reasons, based upon clear, convincing, and satisfactory proof. Doane v. Dunham, 64 Neb. 135, 89 N. W. 640; Woodring v. Seibold, 136 Neb. 647, 287 N. W. 75; O'Shea v. O'Shea, *supra;* Holbein v. Holbein, 149 Neb. 281, 30 N. W. 2d 899.

This being an appeal in an equity action the statute requires this court, in determining questions of fact, to reach an independent conclusion without reference to the findings of the district court. However, if there is an irreconcilable conflict therein on a material issue this court will, in determining the weight of the evidence of witnesses who appeared in court to testify, consider the fact that the trial court observed them and their manner

of testifying and must have accepted one version of the facts rather than the other. Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645; Dier v. Dier, 141 Neb. 685, 4 N. W. 2d 731; Brown v. Brown, 146 Neb. 908, 22 N. W. 2d 148; Meredith v. Meredith, 148 Neb. 845, 29 N. W. 2d 643.

While cited cases are helpful in determining the issues, because there may be some similarity to the case at hand, however, the facts in cases of this kind are never completely alike and the ultimate decision in each case must necessarily be based on the facts thereof. Kucaba v. Kucaba, *supra*.

The record discloses that Roy C. McCormick, the grantor in the deed to the lands herein involved, married appellant on November 25, 1937, at which time he was approximately 57 years of age and she 52. Prior thereto he had been married to Artie May McCormick from whom he was divorced on May 19, 1937. Appellees were the only children of the first marriage and, at the time of trial, Clifton was 41 years of age, married, and living with his family at Oberlin, Kansas, and Paul was 38 years of age, married, and living with his family in Grand Island, Nebraska. McCormick was an engineer for the Burlington railroad and, during the period of time herein involved, lived in Aurora, Nebraska.

The lands involved in this action consist of the south half of the northeast quarter of Section 3, and the south half of the northeast quarter of Section 10, all in Township 14 North, Range 9 West, of the 6th P. M., in Howard County, Nebraska. McCormick apparently purchased the south half of the northeast quarter of Section 3 in 1905 for a consideration of $2,000. The south half of the northeast quarter of Section 10 was apparently purchased by McCormick's father, Curtis B. McCormick, in 1894 for a consideration of $1,400. In 1927 the father sold this land for $8,000 and took back a mortgage thereon for $7,000. In 1929 the father assigned this mortgage to his three children: R. C. McCormick, Chlorie A. Grammer, and Hazel I. Harris. Thereafter, in 1934, the

purchaser of this land deeded it to these three children, the assignees of the mortgage. In 1935 McCormick apparently bought the interest therein of his sister, Hazel I. Harris, for a consideration of $2,000 and, in 1937, he bought the other interest therein from Beatrice and Lester Wages. It appears the sister, Chlorie A. Grammer, had sold her interest to Beatrice Wages. The consideration for this one-third interest was not shown. Thus McCormick became the owner of the entire tract.

At the time of McCormick's divorce from his first wife, Artie May, on May 19, 1937, she was given their home in Aurora, Nebraska, together with all furniture, fixtures, and furnishings therein, and the sum of $2,500. McCormick retained the two eighty-acre tracts in Howard County, which have already been described, and these he owned at the time he married appellant.

It appears that in 1931 McCormick had a malignancy of the posterior part of his tongue but it responded to treatment and cleared up and at the time of his marriage to appellant he appeared to be and was in good health.

At the time of their marriage appellant had property of her own. It appears there was some sort of an oral understanding between the parties, prior to their marriage, to the effect that each of them should keep his or her own property separate and that the children of each should have it. This, of course, did not comply with the provisions of section 30-106, R. S. 1943, as to antenuptial contracts and, even if it did, there would be nothing to prevent a party thereto from abrogating it by giving the other, either by will, deed, or otherwise, any part or all of his or her property. The most that can be said for this testimony is that, prior to the marriage, McCormick evidenced a desire that his children, the appellees, should have what property he then owned.

After their marriage McCormick continued to work as an engineer for the Burlington and they made their home in Aurora. The evidence shows that this marriage was very successful. His feelings toward appellant

were shown by his desire to have her take care of him whenever he was ill, particularly during his last illness. The evidence shows that she did so on. each such occasion and that she gave him splendid care. They also got along very well with his two sons and their families. The family relationship was good. The evidence further shows that at various times during this period he financially helped his sons.

In June 1944 McCormick suddenly became ill. His condition was due to a malignancy in the pancreas. This resulted in a jaundiced condition. He was operated upon and made a good recovery. Apparently because of his condition, resulting from the operation, he retired from active duty with the railroad. However, for over a year thereafter he worked around home taking care of the yard and, together with appellant, did some remodeling in their home.

On December 8, 1944, McCormick executed his last will. The effect of this will was to give appellant all of his property except two legacies of $25 each, one to each of his two sons. The testimony of the witnesses thereto fully establishes that he was then possessed of his full mental faculties and that the will was not the result of anyone's influence but expressed McCormick's own desires.

Thereafter, on December 16, 1944, while he and appellant were visiting in Ravenna, Nebraska, he went to the office of J. H. Harrison, an attorney at law, and had him prepare a warranty deed to this property in favor of his wife. He executed this deed before Harrison, who was a notary public, and then placed it in his safety deposit box in the Farmers State Bank in Aurora. It remained there until sometime in the fore part of November 1945. At that time McCormick became ill and was advised to go to the hospital for an operation. Prior to going to the hospital he went to the bank and took the deed out of his safety deposit box. He then delivered it to the appellant and directed her to have

it recorded. This she did on November 19, 1945, by personally going to St. Paul, Nebraska, and delivering it to the proper county official for recording.

There are no conditions in either the will or the deed as they relate to these lands. The witnesses to the will and the party who drafted the deed testified that no mention was made to them or in their presence of any such condition as the appellees herein claim.

After his illness in November 1945 McCormick continued to decline in health, although his mental faculties remained satisfactory until some two weeks before his death. He died on January 1, 1946, and was buried on January 4, 1946.

On the day after McCormick's funeral appellees testified they talked with appellant about the deed to these lands, which deed they said they had discovered on record, and that she made certain statements in regard thereto. Clifton R. McCormick testified: "She said that my father wanted her to have this land for her lifetime, and if we treated her right, then we were to get this land at her death." Paul A. McCormick testified: "She told us, well, if I remember right, that she knew that Dad wanted her to have the land and the use of the land, and at the time of her death it was to be given to us boys if we treated her right." And further: "She said, 'That's the way Roy wanted it;' that she should have the use of the land and then at the time of her death it was to be given to us boys."

F. E. Edgerton, one of the appellees' counsel, testified he talked with appellant sometime in February 1946. His testimony, insofar as material, is as follows: "* * * she said that she had a deed to this land in controversy, and she said that her late husband had wanted her to have the use of it for her lifetime and then he wanted his boys to have it; and she used the further provision that if they were good to me, she says, 'If they were good to me.'"

Appellant denied making the statements as testified

to by the appellees and Mr. Edgerton. There is no other evidence that McCormick ever referred to or talked of such a provision or condition to anyone, including appellant, during their married life and particularly in connection with the making of his will or the drafting, execution, and delivery of the deed. In fact, outside of the evidence as to the admissions of appellant, which she denies having made, there is no evidence of any such oral arrangement or agreement. This is particularly significant in view of the fact that these instruments contain no such provision or condition.

As recently stated in Holbein v. Holbein, *supra:* "So reluctant are the courts to engraft a trust by parol on the legal title to real estate, that there is perhaps no better established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence."

And, as has already been stated herein, the proof in such cases must be clear, unequivocal, and convincing.

Here the grantee was the wife of the grantor and with whom, during all of the years since their marriage, he had been living in a relationship that was close and harmonious. When the person to whom a conveyance of real property is made is the wife, who is the natural object of the husband's bounty, it raises a presumption of a gift or settlement rather than of a trust. This presumption is, of course, a rebuttable one. 54 Am. Jur., Trusts, § 605, p. 469; 30 C. J., Husband and Wife, § 298, p. 702.

We have come to the conclusion that the evidence fails to establish such a factual situation that a court of equity should raise a trust by construction and fasten it upon the appellant and convert her into a trustee for the purpose of enforcing it. In fact, we have come to the conclusion that the grantor, Roy C. McCormick, intended to and did, by his deed of December 16, 1944, convey to the appellant a fee title in and to the lands therein described.

The decree of the trial court is therefore reversed and the cause remanded with directions that the trial court enter a decree in favor of the appellant and that her prayer for dismissal of appellees' cause of action be sustained.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.