CAROLINE BRATRSOVSKY, APPELLEE, V. REGINA NESTOR ET AL., APPELLANTS.

17 N. W. 2d 669

FILED FEBRUARY 16, 1945. No. 31851.

*Samuel L. Winters,* for appellants.

*Coufal & Shaw, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

In this action plaintiff seeks a decree quieting title to certain lands and an injunction against the defendants' satisfying a judgment by the sale of the lands. Defendants are judgment creditors of plaintiff's husband and the sheriffs of Saunders and Butler counties. The judgment creditors hereinafter will be referred to as the defendants. Defendants sought a decree that the land belonged to plaintiff's husband, and to have their judgment satisfied by its sale. The trial court found and decreed for the plaintiff. Defendants appeal. We affirm the judgment of the trial court.

This litigation arises as a result of the following factual situations.

In 1931 plaintiff's husband, as surety, signed a note in the principal amount of $700, payable to one John Kaveney. In 1936 the note was renewed and made payable to Nora Kaveney, devisee of John, and upon her death ownership to the note passed to defendants Nestor and Rice.

In 1915 plaintiff's husband acquired title by purchase to

80 acres of farm land in Butler county and 40 acres of land in Saunders county. The tracts were not contiguous. The land was then charged with a lien of $4,000, which in 1935 was represented by a mortgage in that principal amount, executed upon the Butler county land to secure the payment of that lien. The Butler county land has been the statutory homestead of the plaintiff at all times mentioned herein. The husband owned no other land. In 1930 and 1931 plaintiff's husband became indebted to one Cihacek in excess of $1,000 for money loaned, an obligation represented by a promissory note which was renewed from time to time. Interest became delinquent on these several obligations and taxes were accrued and delinquent on the land.

On June 9, 1938, the defendant Rice and her husband called upon the plaintiff's husband and demanded payment of the Kaveney obligation. He was unable to pay. The husband and plaintiff immediately called upon an attorney, related their difficulties and the Rice demand, and the husband was advised to give his property to his wife.

On June 10, 1938, plaintiff and her husband went to the attorney, executed a note for $1,500 to Cihacek, representing the amount of his debt, and also executed a mortgage to secure the same upon the two pieces of land. This mortgage was filed for record in Saunders county, June 10, 1938, and in Butler county, June 11, 1938. The husband on the same day executed and delivered a quitclaim deed of the land to his wife, in "consideration of $1.00, love and affection * * * Subject to two real estate mortgages now of record." This deed also was filed for record June 10, 1938, in Saunders county, and June 11, 1938, in Butler county.

Thereafter, the defendants Nestor and Rice placed the Kaveney note in judgment on November 8, 1940, caused an execution to be issued and levied against the Butler county land on October 30, 1943, and on November 4, 1943, caused execution to be issued and levied against the Saunders county land.

Plaintiff then, alleging ownership of the land, brought this action seeking a decree quieting title in her, and en-

joining the defendants from selling the land to satisfy their judgment. The two mortgagees intervened and sought a decree determining the validity and liens of their mortgages.

Defendants, by answer and cross-petition, sought a decree that the conveyance from plaintiff's husband to plaintiff was fraudulent; that the conveyance was colorable only; that the husband was the real owner of the property; that they be decreed to have a lien upon the land to satisfy their judgment; and that the property be sold by court order or under execution to satisfy the same. The defendants also claimed that the two mortgages were colorable and prayed that they be declared null and void.

The trial court made specific findings of fact and law. The correctness of only a part of the findings are challenged on this appeal. The trial court found that the two mortgages were valid and subsisting liens on the real estate; that the plaintiff and her husband had a statutory homestead in the Butler county land, and a $2,000 homestead exemption therein; that the mortgages and tax liens on the Butler county land on June 10, 1938, were in excess of $4,375, to which was to be added the homestead exemption of $2,000; and that the mortgage and tax liens on the Saunders county land were in excess of $1,600 on the same date. The above findings are not challenged on this appeal.

The trial court also found that the fair market value of the Butler county land on June 10, 1938, was $4,375, and that of the Saunders county land was $1,200; that the equity in the lands on June 10, 1938, was of no monetary value; that the conveyance did not operate to hinder, delay or defraud creditors; that the conveyance by the husband to the plaintiff in 1938 was not in fraud of the defendants or any other creditor; that the defendants suffered no injury by the conveyance; and that at the time the defendants' judgment was obtained, the husband, judgment debtor, did not have any interest in the land save the right of inheritance and the homestead right.

Defendants' contention is that the conveyance of June, 1938, was colorable only and that the husband was and is

the equitable owner of the property. There is no question but that the husband conveyed this property to his wife, on the advice of counsel that it was legal for him to do so, as "the best way to save a little bit of something for ourselves." There is likewise no question but that the conveyance was made because the defendants were pressing for the payment of the note. There also is no question but that the conveyance was made and intended to be an absolute and unconditional transfer of the title and beneficial interest. The parties testify that it was a gift; that there was no understanding that plaintiff was to hold the land for her husband, and no understanding that she would at any time convey it back to him or at his direction. The land was hers. There are no facts or circumstances shown that negative this testimony. Not to be overlooked in this connection is the fact that the instruments showing ownership in the wife were made a matter of public record immediately following their execution. The evidence shows that at the same time the deed was executed, plaintiff's husband also conveyed his farm stock, machinery, etc., to his wife. This bill of sale also was filed in the county clerk's office on June 11, 1938. Thereafter, the plaintiff and her husband continued to live on the farm and to work together to earn a living there. The bank account was in plaintiff's name, although the husband on occasion, for taxes, etc., checked against it; when they borrowed money at the bank, the wife signed first, the husband with her. The husband paid no rent to the wife, and none was asked. It was not even discussed. There likewise was no accounting made of the proceeds of the farm.

Defendants argue that this shows that the husband remained the owner of the property. We do not think so. The evidence shows that the husband and wife were living on the land, working together and using the products of the land and their labor for the expenses of the farm and for the normal home and family purposes. These acts are as consistent with ownership by the wife as ownership by the husband.

We agree with the conclusion of the trial court that the land belongs to the wife, unless there inheres in the conveyance a fatal defect because of the intent which the parties had when the conveyance was made, or because of its value being above the husband's exemptions.

The rule in this state has always been that "Property which is exempt by law from liability for the owner's debts is not susceptible of a fraudulent alienation." *Derby v. Weyrich,* 8 Neb. 174. In the body of that opinion, this court quoted with approval the following statement: " 'Property which is exempt by a positive statute from liability for the owner's debts is not susceptible of a fraudulent alienation, and consequently is not within the statute. The creditors cannot be said to be creditors as to that particular property so as to make a transfer of it matter of concern to them. The debtor as to that property may be considered as without creditors, and he has the right to dispose of it as though he had no creditors. * * * .' "

The rule further is that "In an action by the vendee of exempt property to quiet his title as against judgment creditors of the vendor, fraud is an immaterial issue." *Smith v. Neufeld,* 61 Neb. 699, 85 N. W. 898. Also, "A wife, who by mesne conveyance from her husband acquires property exempt as the homestead of the family, takes the title thereof unincumbered by judgments against the husband, although the purpose of such conveyance may have been to defraud creditors of the latter." *Mundt v. Hagedorn,* 49 Neb. 409, 68 N. W. 610.

These rules have been repeatedly followed. See *Bloedorn v. Jewell,* 34 Neb. 649, 52 N. W. 367; *Munson v. Carter,* 40 Neb. 417, 58 N. W. 931; *Roberts v. Robinson,* 49 Neb. 717, 68 N. W. 1035; *Bank of·Bladen v. David,* 53 Neb. 608, 74 N. W. 42; and *Plummer, Perry & Co. v. Rohman,* 61 Neb. 61, 84 N. W. 600, wherein this court said: "The husband could, of course, convey his homestead to his wife, and it would be immaterial whether his purpose was or was not to defraud his creditors."

We come then to defendants' contention that the trial

court erred in determining the value of the land, and that its value was in excess of the homestead exemption and admitted liens. Plaintiff offered one witness as to value. Defendants offered the husband of defendant Rice as a witness as to value. The trial court refused to permit him to testify as to the value. An offer then was made and an objection sustained. It then was stipulated that defendant Nestor's husband would, if permitted, testify, as would and did Mr. Rice. Subsequently, the trial court reversed his ruling and considered the offered testimony as in evidence.

Plaintiff's witness was a disinterested expert. He was a farmer, secretary of the Butler County Farm Loan Association operating in Butler, Seward and Saunders counties in connection with Federal farm loans, and trained in the making of appraisals to determine value, productivity and quality of soils. He had made approximately 700 appraisals in Butler and surrounding counties. He had sold lands owned by the Federal Land Bank and others. He examined the two tracts involved as to the nature of the soil and productive quality. He testified that of the 80-acre tract, 15 acres were "very fine sandy loam," not very productive and should not be cultivated for crops; that there were 15 acres classed as silt loam, better than the fine sand loam, but quite sandy and not a good productive soil; that the remaining 50 acres were "very good, a high type fertility soil" and "quite productive." He also examined the 40 acres and found them to be largely "fine sandy loam," some blow sand and some gravel. This evidence as to quality was supported by a soil survey as made by the United States Department of Agriculture. The defendants offered no evidence questioning this testimony as to quality and productivity. This witness gave it as his opinion that as of June 10, 1938, the 40 acres of Saunders county land were of the fair market value of $30 per acre; that of the Butler county land, the 50 acres of best quality had a fair market value as of June 10, 1938, of $65 per acre, the 15 acres of intermediate quality land had a value of $40 per acre, and the 15 acres of poorer quality land $34 (sic) per acre, totaling $4,375.

Defendants' witness, husband of defendant Rice, testified as to foundation that he was a farmer, residing in Nance county; that his wife owned land a quarter of a mile from the plaintiff's "place" (without distinguishing which of the two pieces he referred to) ; that he had "been there," referring to "the Bratrsovsky farm"; that he knew the land right close to it and "that land" and his wife's land compared "probably about like and like"; and (accepting the offer as in evidence) that he knew the value of farm lands in that locality and that the fair market value of the plaintiff's land as of June, 1938, was $75 per acre. Mr. Nestor then was called as a witness and it was stipulated that he would testify as had Mr. Rice as to foundation and value. We reach the same conclusion as did the trial court as to the value of the land as of June, 1938.

The fact that 40 acres of this land were not contiguous to the 80 acres in which the homestead was claimed does not alter the situation. The mortgage to Cihacek covered both tracts and exceeded the value of the 40-acre tract. The plaintiff's husband would have had the right to have the 40 acres sold first to satisfy the lien thereon and removing so far as possible the lien against the 80 acres in which they had a homestead exemption. See *Smith v. Neufeld, supra; Meyer v. Platt,* 137 Neb. 714, 291 N. W. 86. The trial court so found in determining the full amount of the Cihacek mortgage to be a lien on the 40 acres. The defendants do not here complain of that finding.

Defendants called plaintiff as their witness and offered to prove by her that she had entered into a contract to sell the Butler county land at $125 per acre with possession to be given March 1, 1944. The trial court sustained an objection to this offer and defendants assign that as error. This offer and assignment do not relate to the 40 acres in Saunders county.

It is obvious that the sale price of this land in 1944, no other date being fixed in the offer, is too remote to have any controlling influence in the determination of the value of the land as of June, 1938. However, premising their argu-

ment on the contention that the transfer was colorable only and that the husband remained in fact the beneficial owner of the property, defendants argue that value of the land should be determined as of the time of the trial, and that accordingly, this evidence was admissible and controlling. Concluding, as we have, that the defendants' premise is not correct, we necessarily find that their contention based thereon is without merit.

We have held: "The question of fraudulent intent is to be considered as of the time when the conveyance is made, and with reference to the particular conveyance alleged to have been fraudulent as against creditors." *Tanner v. Frink*, 103 Neb. 817, 174 N. W. 417. See *Butke v. Nachschoen*, 133 Neb. 366, 275 N. W. 318; *Farmers Elevator Co. v. Peck*, 134 Neb. 305, 278 N. W. 499.

This being a homestead, whether or not it was susceptible of a fraudulent alienation depends upon its value. Obviously, value being an element, that value must be determined as of the time the conveyance was made. This court has many times followed that rule. Probably the case most directly in point is that of *Bank of Bladen v. David*, 53 Neb. 608, 74 N. W. 42. There a conveyance of the homestead was made from husband to wife. Plaintiff at the time of the conveyance was a creditor of the husband. After the conveyance to the wife, the land was abandoned as the homestead. Plaintiff put its debt in judgment and sought by creditor's bill to subject the land to payment of the judgment against the husband. Plaintiff contended that the consideration for the conveyance was not sufficient to sustain it against the claims of creditors. We held that even if that be so, it was not liable to the payment of plaintiff's judgment. We further held that the land being a homestead and, after deducting the indebtedness secured by mortgage thereon, its actual value at the time of its conveyance being less than $2,000, it was exempt from levy and sale for the satisfaction of the husband's debts, and that the creditor was not injured by the transfer and had no grievance even if the transfer was without consideration and made

to defraud creditors. The creditor further contended that when the land lost its homestead character, it became liable for the satisfaction of the judgment, i. e., in the wife's ownership, the land later acquired a value that was not exempt. We said that a sufficient answer to that contention was that the land was not then the property of the judgment debtor; that the conveyance was valid when made, it was not vitiated by the abandonment of the land as a homestead, it remained a valid conveyance which "Even Jove himself could not change".

The failure of the trial court to admit the offered evidence was not prejudicial to the defendants.

We conclude that the conveyance of this land to the plaintiff was legal and valid when made, and that the plaintiff is the owner of the land, and that it is not subject to sale to satisfy the judgment of the defendants.

The judgment of the trial court is affirmed.

AFFIRMED.